No. 23-60463

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

―――――――――――

DISABILITY RIGHTS MISSISSIPPI; LEAGUE OF WOMEN VOTERS OF
MISSISSIPPI; WILLIAM EARL WHITLEY; MAMIE CUNNINGHAM;
YVONNE GUNN,

Plaintiffs-Appellees

v.

LYNN FITCH, in her official capacity as Attorney General of the State of
Mississippi; MICHAEL D. WATSON, JR., in his official capacity as Secretary of
State of Mississippi,

Defendants-Appellants

―――――――――――

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

―――――――――――

BRIEF FOR THE UNITED STATES AS AMICUS CURIAE SUPPORTING
PLAINTIFFS-APPELLEES AND URGING AFFIRMANCE

―――――――――――

KRISTEN CLARKE
  Assistant Attorney General

NICOLAS Y. RILEY
BRANT S. LEVINE
  Attorneys
  U.S. Department of Justice
  Civil Rights Division
  Appellate Section
  Ben Franklin Station
  P.O. Box 14403
  Washington, D.C.  20044-4403
  (202) 616-4373

# TABLE OF CONTENTS

**PAGE**

INTEREST OF THE UNITED STATES ...................................................1

STATEMENT OF THE ISSUE....................................................................2

STATEMENT OF THE CASE.......................................................................2

    A.    Statutory Background............................................................2

    B.    Factual and Procedural Background .....................................4

SUMMARY OF ARGUMENT......................................................................6

ARGUMENT

    I.    Section 208 entitles persons with disabilities to receive
        assistance from any person of their choice when
        returning their absentee ballot. .............................................7

        A.    Section 208's rights include assistance with
            absentee balloting.......................................................7

        B.    Section 208's limited exceptions are exclusive. .......................10

    II.    Section 208 preempts Mississippi's more restrictive law
        limiting who can collect absentee ballots from persons
        with disabilities......................................................................12

CONCLUSION ...........................................................................................17

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**CASES:**                                                              **PAGE**

*Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321 (2021)...............................13

*Carey v. Wisconsin Elections Comm'n*,
    624 F. Supp. 3d 1020 (W.D. Wis. 2022).................................. 9, 16

*Crosby v. National Foreign Trade Council*, 530 U.S. 363 (2000) ..........................14

*Democracy N.C. v. North Carolina State Bd. of Elections*,
    476 F. Supp. 3d 158 (M.D.N.C. 2020) ...........................................................9

*Disability Rts. N.C. v. North Carolina State Bd. of Elections*,
    602 F. Supp. 3d 872 (E.D.N.C. 2022) ...........................................................9

*Disability Rts. N.C. v. North Carolina State Bd. of Elections*,
    No. 5:21-CV-361, 2022 WL 2678884 (E.D.N.C. July 11, 2022) .................16

*Hillman v. Maretta*, 569 U.S. 483 (2013).................................................................10

*Hughes v. Talen Energy Mktg., LLC*, 578 U.S. 150 (2016)....................................13

*Medical Ctr. Pharmacy v. Mukasey*, 536 F.3d 383 (5th Cir. 2008) ........................10

*Medtronic, Inc. v. Lohr*, 518 U.S. 470 (1996) .........................................................13

*OCA-Greater Hous. v. Texas*, 867 F.3d 604 (5th Cir. 2017).......................... *passim*

*Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373 (2015)....................................................12

*Parada v. Garland*, 48 F.4th 374 (5th Cir. 2022)....................................................10

*Priorities USA v. Nessel*, 628 F. Supp. 3d 716 (E.D. Mich. 2022) ........................11

*Ray v. Texas*, No. 2-06-CV-385,
    2008 WL 3457021 (E.D. Tex. Aug. 7, 2008).................................................11

**CASES (continued):**                                                  **PAGE**

*Union Pac. R.R. Co. v. City of Palestine*, 41 F.4th 696 (5th Cir. 2022),
    *cert. denied*, 143 S. Ct. 579 (2023)...................................................13

*United States v. Alabama*, 778 F.3d 926 (11th Cir. 2015).......................11

*United States v. Naranjo*, 259 F.3d 379 (5th Cir. 2001)...........................11

*Villas at Parkside Partners v. City of Farmers Branch*,
    726 F.3d 524 (5th Cir. 2013) (en banc) .........................................14

*Young Conservatives of Tex. Found. v. Smatresk*,
    73 F.4th 304 (5th Cir. 2023) ........................................................12

**CONSTITUTION:**

U.S. Const. Art. VI, Cl. 2 ...............................................................12

**STATUTES:**

Voting Rights Act
    52 U.S.C. 10101(c) .....................................................................1
    52 U.S.C. 10307(a) .....................................................................1
    52 U.S.C. 10308(d) .....................................................................1
    52 U.S.C. 10310(c)(1) ...............................................................2, 8
    52 U.S.C. 10508.....................................................................2, 7, 10

Miss. Code. Ann. § 23-15-713 (2023) .......................................................3

Miss. Code Ann. § 97-13-37 (2023) .........................................................15

Miss. S.B. 2358, § 1(1) .....................................................................4

Miss. S.B. 2358, § 1(2) .....................................................................4

**RULE:**

Fed. R. App. P. 29(a) ......................................................................2

**LEGISLATIVE HISTORY:**                                                                 **PAGE**

S. Rep. No. 417, 97th Cong., 2d Sess. (1982) ........................................ 3, 13, 15-16

**MISCELLANEOUS:**

Elections Assistance Comm'n and Rutgers Univ., *Disability and Voting*
        *Accessibility in the 2022 Elections* 5 (July 2023),
        https://perma.cc/C72V-XZLB ........................................................................5

U.S. Dep't of Just., *Cases Raising Claims under Section 208 of the*
        *Voting Rights Act*,
        https://perma.cc/A2ZY-X7H7 (updated July 20, 2022)..................................1

## INTEREST OF THE UNITED STATES

This appeal is about whether Section 208 of the Voting Rights Act preempts a Mississippi law that restricts who may collect and transmit absentee ballots from persons with disabilities.  The United States has a substantial interest in this question because the Department of Justice enforces the Voting Rights Act.  *See* 52 U.S.C. 10101(c), 10307(a), 10308(d).  In fact, the United States has filed several lawsuits over the years to ensure that persons with disabilities receive the rights they are entitled to under Section 208.  *See* U.S. Dep't of Just., *Cases Raising Claims under Section 208 of the Voting Rights Act*, http://perma.cc/A2ZY-X7H7 (updated July 20, 2022).

The United States also has a substantial interest in ensuring that courts properly and uniformly interpret Section 208's protections for voters with disabilities.  To this end, the United States routinely files amicus briefs and statements of interest addressing Section 208's scope and preemptive effect.  *See, e.g.*, Amicus Br., *OCA-Greater Hous. v. Texas*, 867 F.3d 604 (5th Cir. 2017) (No. 16-51126); Statement of Interest, *La Unión Del Pueblo Entero v. Abbott*, No. 5:21-cv-844 (W.D. Tex. June 23, 2023); Statement of Interest, *Carey v. Wisconsin Election Comm'n*, No. 3:22-cv-00402 (W.D. Wis. Aug. 18, 2022); Statement of Interest, *Missouri Prot. & Advoc. Servs. v. Ashcroft*, No. 2:22-cv-4097 (W.D. Mo. Sept. 16, 2022).

The United States files this amicus brief under Federal Rule of Appellate Procedure 29(a).

## STATEMENT OF THE ISSUE

The United States addresses the following question:

Does Section 208 of the Voting Rights Act preempt a Mississippi law that restricts who may collect and transmit absentee ballots from people needing assistance to return those ballots because of blindness, disability, or inability to read or write?

## STATEMENT OF THE CASE

### A.    Statutory Background

**Section 208.** Section 208 of the Voting Rights Act states that "[a]ny voter who requires assistance to vote by reason of blindness, disability, or inability to read or write may be given assistance by a person of the voter's choice, other than the voter's employer or agent of that employer or officer or agent of the voter's union." 52 U.S.C. 10508. The Voting Rights Act defines the terms "vote" and "voting" to include "all action necessary to make a vote effective." 52 U.S.C. 10310(c)(1). This includes, but is not limited to, any "action required by law prerequisite to voting, casting a ballot, and having such ballot counted properly and included in the appropriate totals of votes cast." *Ibid.*

Section 208 was enacted in 1982 after Congress found that "[c]ertain discrete groups of citizens are unable to exercise their rights to vote without obtaining assistance in voting." S. Rep. No. 417, 97th Cong., 2d Sess. 62 (1982). This need for assistance created two potential problems. First, some individuals with disabilities chose not to vote at all rather than rely on someone whom they did not choose to help them vote. *Ibid.* Second, these voters were "more susceptible than the ordinary voter to having their vote unduly influenced or manipulated." *Ibid.* To address these challenges, Congress decided that these individuals "must be permitted to have the assistance of a person of their own choice," with the only exceptions being agents of the voter's employer or union. *Id.* at 62, 64. This solution was "the only way to assure meaningful voting assistance and to avoid possible intimidation or manipulation of the voter." *Id.* at 62.

**Mississippi Election Code.** Mississippi allows certain voters to vote absentee, including persons with "a temporary or permanent physical disability" that prevents them from voting in person without substantial hardship. Miss. Code. Ann. § 23-15-713 (2023). Under a recently enacted law, those individuals may transmit their absentee ballots only through these people or entities:

- an election official while engaged in official duties as authorized by law;

- an employee of the United States Postal Service while engaged in official duties as authorized by law;

- 3 -

- any other individual who is allowed by federal law to collect and transmit United States mail while engaged in official duties as authorized by law;

- a family member, household member, or caregiver of the person to whom the ballot was mailed; or

- a common carrier that transports goods from one place to another for a fee.

*See* Miss. S.B. 2358, § 1(1).  Violations are subject to criminal penalties.  *Id.*
§ 1(2).

## B.    Factual and Procedural Background

1.  Plaintiff William Whitley is a Black 79-year-old Vietnam War veteran who had both of his legs amputated.  ROA.96-97.  Because of his amputations, Mr. Whitley suffers from chronic pain and infections, so much so that he sometimes cannot leave his house, even to get his mail.  ROA.97.  Although voting is important to Mr. Whitley—a lifelong Mississippian—his disability has caused him to miss some elections because he was in too much pain to travel to his voting precinct.  ROA.98.  But thanks to two members of his church (who are also plaintiffs in this suit), he managed to vote absentee after they came to his house and assisted him with registering to vote and returning his ballot.  ROA.98.  Under Mississippi's new election law, however, these church volunteers would be prohibited from collecting Mr. Whitley's ballot again.  ROA.98.  In fact, Mr.

Whitley fears they will now be prosecuted if he asks for their help, and he is not sure how he will be able to vote in upcoming elections without them.  ROA.98-99.

Mr. Whitley is not alone.  Around one in five adults in Mississippi—more than 850,000 people—suffer from a disability.  ROA.336.  And according to a recent nationwide study, around one in five voters with a disability either needed assistance or had trouble with voting—three times the rate of voters without disabilities.  *See* Elections Assistance Comm'n and Rutgers Univ., *Disability and Voting Accessibility in the 2022 Elections* 5 (July 2023), https://perma.cc/C72V-XZLB.  Voters with disabilities were also more likely than voters without disabilities to vote by mail.  *Ibid.*

2.  In addition to Mr. Whitley, plaintiffs include two nonprofit organizations and two individuals who assist voters with disabilities.  ROA.21.  Collectively, they allege that Mississippi's new law will harm thousands of Mississippi voters who vote absentee.  ROA.30.  They seek to invalidate that law under the Supremacy Clause, arguing that Mississippi improperly tried to restrict rights provided by Section 208 of the Voting Rights Act.  ROA.35.

The district court granted plaintiffs' motion for a preliminary injunction, holding that Section 208 preempts the new Mississippi law.  ROA.332-338.  The court highlighted the new law's broad scope and vague nature, noting that the statute does not define who qualifies as a "caregiver," "family member[]," or

"household member[]." ROA.336-337. The court also found that voters with disabilities would be deterred from voting under the new law. ROA.337. The court thus concluded that plaintiffs met their burden for an injunction preventing enforcement of the bill statewide. ROA.337. Mississippi timely appealed to this Court.

## SUMMARY OF ARGUMENT

Mississippi's new election law cannot be squared with the plain text of Section 208 of the Voting Rights Act. While Section 208 allows persons with disabilities to choose almost anyone to help them with voting, Mississippi's law does the opposite: it criminalizes almost all assistance to voters with disabilities who need help with returning their absentee ballots.

Just like the last time this Court considered whether Section 208 preempted a state law, the plain text of the statute again determines the outcome. *See OCA-Greater Hous. v. Texas*, 867 F.3d 604, 615 (5th Cir. 2017) (holding that Section 208 preempted a Texas law that prohibited voters from choosing an interpreter of their choice to communicate with elections officials). Section 208's text creates a guaranteed right for voters with disabilities to receive help from anyone of their choice with voting, with two exceptions and two exceptions only. That text also omits any authorization for States to create more exceptions. Congress has thus spoken.

So just like the last time, this Court should hold that Section 208 preempts a state law that restricts more conduct than Congress legislated. *See OCA*, 867 F.3d at 615. This outcome does not change even if Mississippi could show that its law furthers Section 208's goals or exercises its traditional police powers to combat election fraud. Those considerations cannot override congressional intent, as expressed in clear federal statutory text. Congress considered the rights of States before enacting Section 208, and the final version of the law does not disturb the States' role as the primary regulator of their own elections. This Court should thus affirm the district court's ruling.

## ARGUMENT

**I.    Section 208 entitles persons with disabilities to receive assistance from any person of their choice when returning their absentee ballot.**

**A.    Section 208's rights include assistance with absentee balloting.**

Section 208's text bestows a broad and explicit right to any voter with a disability who needs help to vote: they may seek "assistance by a person of the voter's choice," with the only exceptions being "the voter's employer or agent of that employer or officer or agent of the voter's union." 52 U.S.C. 10508. That the affected voters here are voting absentee, rather than in person, makes no difference in this textual analysis. Section 208 contains no carveout for any particular method of voting, such as absentee voting. To the contrary, the law broadly allows voters

- 7 -

with disabilities to choose assistors for "*all* action necessary to make a vote effective."  52 U.S.C. 10310(c)(1) (emphasis added).

Mississippi does not argue otherwise, and rightly so:  this Court has already ruled that Section 208 reaches beyond the literal act of voting.  *See OCA-Greater Hous. v. Texas*, 867 F.3d 604, 615 (5th Cir. 2017).  In *OCA*, a unanimous panel held that Section 208 preempted a Texas law that prohibited voters from choosing an interpreter of their choice to communicate with elections officials.  *Ibid.* Relying on the statute's "unambiguous language," this Court held that Section 208 "plainly contemplates more than the mechanical act of filling out the ballot sheet," including "steps in the voting process *before entering* the ballot box," and "steps in the voting process *after leaving* the ballot box."  *Id.* at 614-615.  Thus, Texas's law—which regulated conduct at polling precincts—fell within Section 208's coverage.

*OCA*'s precedent means that voters with disabilities may invoke their rights under Section 208 at any critical stage of the voting process, including absentee balloting.  Mississippi concedes that Section 208 applies here but claims that *OCA* does not control the outcome.  Miss. Br. 29-30.  According to Mississippi, *OCA*'s holding turned only on the definition of "vote," not who may assist voters.  *Id.* at 29-31.  But those two issues were inextricably intertwined in the Court's holding.  After all, if Section 208 allowed Texas to decide who could serve as interpreters,

then Texas's law would have been valid.  So just as persons with language barriers may seek assistance from any person they want, so too may persons with physical disabilities choose any person they want to mail their absentee ballot.  *See OCA*, 867 F.3d at 614.

Other courts agree.  Applying the same straightforward statutory analysis that this Court used in *OCA*, many district courts have held that "the plain language of Section 208 gives voters unfettered choice over who may assist them with the voting process," including returning their absentee ballot.  *Disability Rts. N.C. v. North Carolina State Bd. of Elections*, 602 F. Supp. 3d 872, 877 (E.D.N.C. 2022); *see also, e.g.*, *Democracy N.C. v. North Carolina State Bd. of Elections*, 476 F. Supp. 3d 158, 235-236 (M.D.N.C. 2020) (recognizing that "[t]he unambiguous language of the VRA" applies to transmitting absentee ballots (quoting *OCA*, 867 F.3d at 614)); *Carey v. Wisconsin Elections Comm'n*, 624 F. Supp. 3d 1020, 1033 (W.D. Wis. 2022) (relying on Section 208's text to hold that persons with disabilities may choose someone to assist them with mailing their absentee ballots).  These decisions reflect the commonsense notion that a voter who is physically unable to return an absentee ballot because of disability faces the same barrier to making their vote "effective" as a voter who cannot physically place their ballot in the ballot box because of disability.

**B.    Section 208's limited exceptions are exclusive.**

Section 208's expansive right to assistance contains just two exceptions: persons with disabilities needing help to vote cannot receive assistance from someone affiliated with (1) their employer or (2) their union. *See* 52 U.S.C. 10508. "Where Congress creates specific exceptions to a broadly applicable provision, the proper inference is that Congress considered the issue of exceptions and, in the end, limited the statute to the ones set forth." *Medical Ctr. Pharmacy v. Mukasey*, 536 F.3d 383, 395 (5th Cir. 2008) (alteration, citation, and internal quotation marks omitted).  Put simply, "when Congress provided the two exceptions . . . it created all the keys that would fit." *Parada v. Garland*, 48 F.4th 374, 377 (5th Cir. 2022).

Those tenets apply here, meaning that Section 208's exceptions are exclusive.  As the Supreme Court has emphasized, "[w]here Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent." *Hillman v. Maretta*, 569 U.S. 483, 496 (2013) (alteration in original; citation omitted).  No contrary intent exists here.  Quite the opposite—Congress was keenly aware that voters with disabilities faced higher risks of exploitation, yet Congress designed Section 208 without any specific provisions giving States leeway to further regulate who could assist these voters.

- 10 -

Mississippi tries to avoid this straightforward rule of statutory construction by arguing that Section 208 implicitly allows further restrictions because voters may choose "*a*" person of their choice to assist them, not "*the*" person of their choice.  Miss. Br. 24-25, 31-33.  But this distinction is linguistically and legally meaningless.  As this Court explained when examining another federal law, the "ordinary meaning" of "*a violation*" means "*any* violation."  *United States v. Naranjo*, 259 F.3d 379, 382 (5th Cir. 2001).  Other courts have likewise repeatedly found that the word "a" was "was purposefully used as a synonym for the word 'any.'"  *United States v. Alabama*, 778 F.3d 926, 932 (11th Cir. 2015) (citation omitted) (collecting cases).

To be sure, as Mississippi points out (Miss. Br. 25, 29),  two district courts have held otherwise, finding that Section 208 "allows some wiggle room" for States to restrict who may assist voters.  *Priorities USA v. Nessel*, 628 F. Supp. 3d 716, 733 (E.D. Mich. 2022); *see also Ray v. Texas*, No. 2-06-CV-385, 2008 WL 3457021, at *7 (E.D. Tex. Aug. 7, 2008) ("The language of Section 208 allows the voter to choose a person who will assist the voter, but it does not grant the voter the right to make that choice without limitation.").  *Ray*, though, predates *OCA*, and *Priorities USA* conflicts with it.  And in all events, these outlier decisions cannot be reconciled with Section 208's plain meaning.  After all, many voters covered by Section 208 will have "*a*" particular person in mind to assist them—

perhaps with no other alternatives.  Section 208 thus requires that they be given assistance by that person.

## II.    Section 208 preempts Mississippi's more restrictive law limiting who can collect absentee ballots from persons with disabilities.

Because the text of Section 208 is clear, the preemption question is straightforward.  As this Court recognized in *OCA*, "[i]t should go without saying that a state cannot restrict [Section 208's] federally guaranteed right by enacting a statute tracking its language, then defining terms more restrictively than as federally defined."  *OCA-Greater Hous. v. Texas*, 867 F.3d 604, 615 (5th Cir. 2017).  That is exactly what happened here:  Mississippi enacted a statute allowing persons with disabilities to receive assistance with returning their absentee ballots, but the State restricted those voters' choices more narrowly than Section 208.

In situations like this, the Supremacy Clause preempts state law through conflict preemption.  *See Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373, 376-377 (2015) (citing U.S. Const. Art. VI, Cl. 2).  Conflict preemption exists when "compliance with both state and federal law is impossible, or where the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."  *Young Conservatives of Tex. Found. v. Smatresk*, 73 F.4th 304, 313 (5th Cir. 2023) (quoting *Oneok*, 575 U.S. at 377).  Mississippi's law obstructs Congress's purpose by impeding voters with disabilities from choosing the person of their choice to assist them.  Indeed, under Mississippi's law,

members of Mr. Whitley's church face potential criminal penalties for the assistance to voters that Section 208 protects.

Mississippi, though, argues that its law can be justified through its "'strong and entirely legitimate state interest' in 'the prevention of fraud.'"  Miss. Br. at 39 (quoting *Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2340 (2021)).  But these legitimate interests are not without limits.  As the Supreme Court has cautioned, States may not seek to achieve legitimate ends through means that intrude on federal law.  *See Hughes v. Talen Energy Mktg., LLC*, 578 U.S. 150, 164 (2016).  That is because "*Congress's* intent is the 'ultimate touchstone'" when determining whether a federal law preempts a state one.  *Union Pac. R.R. Co. v. City of Palestine*, 41 F.4th 696, 704 (5th Cir. 2022) (emphasis added) (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)), *cert. denied*, 143 S. Ct. 579 (2023).

Because Congress's intent, as expressed through the statute's plain language, is clear, Mississippi also cannot avoid preemption by showing that its law furthers Section 208's goal of protecting certain voters from harm.  Miss. Br. 26-27.  As Mississippi acknowledges, Congress already considered the need "to avoid possible intimidation or manipulation of the voter."  Miss Br. 26 (quoting S. Rep. No. 417, 97th Cong., 2d Sess. 62 (1982) (Senate Report)).  And "'conflict is imminent' when 'two separate remedies are brought to bear on the same activity.'"

*Villas at Parkside Partners v. City of Farmers Branch*, 726 F.3d 524, 529 (5th Cir. 2013) (en banc) (quoting *Crosby v. National Foreign Trade Council*, 530 U.S. 363, 380 (2000)).  So even if Mississippi's law would prevent ballot fraud against persons with disabilities—and the legislature conducted no factfinding on this (ROA.337)—that would not change the outcome.  Congress considered the potential coercive effects of assistors but included only employment-related exceptions in the law.

Mississippi floats a parade of horribles in response, contending that Congress could not have intended to allow "murderer[s]," "election fraudster[s]," or "sexual predator[s]" to assist voters.  Miss. Br. 35.  But Mississippi cannot substitute its judgment for Congress's, especially when the text of the law is clear.  And in any event, Mississippi's law would not fix this unrealistic and undocumented problem.  First, "incarcerated" or "institutionalized" persons would not even be able to collect and mail absentee ballots given their isolation from society.  Miss. Br. 35.  Second, Mississippi's sweeping law does not simply target these bad actors—it prohibits *everyone* from helping transmit absentee ballots, except for a few discrete permitted categories of assistors.  The law could thus harm the voters who most need help returning their absentee ballots.

At bottom, this is not a case in which a State is being impeded from protecting its voters.  In fact, the injunction sought by plaintiffs would allow

Mississippi to apply its new law to most voters in the State—just not to people like Mr. Whitley, whose ability to vote depends on choosing an assistor of his choice. *See* Appellee Br. 4. In that sense, Section 208 does not materially alter Mississippi's ability to regulate elections and prosecute fraud. Mississippi, for example, can still enforce other election laws, such as ones outlawing intimidation to procure votes. Miss. Code Ann. § 97-13-37 (2023).

The legislative history also reaffirms that Section 208's targeted focus does not upset the States' role as the primary regulator of their own elections. Before Congress enacted Section 208, the Judiciary Committee recognized "the legitimate right of any state to establish necessary election procedures." Senate Rep. 63. But the Committee added an important caveat: States' rights to regulate election procedures are "subject to the overriding principle that such procedures shall be designed to protect the rights of voters." *Ibid.* So state laws would be preempted "only to the extent that they unduly burden the right recognized in this section, with that determination being a practical one dependent upon the facts." *Ibid.* For example, "a procedure could not deny the assistance at some stages of the voting process during which assistance was needed." *Ibid.*

This legislative context confirms that if voters with disabilities need assistance to deliver their completed absentee ballots—the last, essential stage in the voting process—then these individuals "must be permitted to have the

assistance of a person of their own choice." Senate Report 62. Mississippi

misreads this Senate Report by claiming that Congress left the door open to further

protect voters. Miss. Br. 35. It did not: "the only way to assure meaningful voting

assistance *and to avoid possible intimidation or manipulation of the voter*,"

Congress determined, was to allow covered voters to "have the assistance of a

person of their own choice." Senate Report 62 (emphasis added). This finding

underscores that Congress intended Section 208 "to create a guaranteed right to the

voting process that could not be narrowed or limited by state legislation"

addressing ballot harvesting. *Disability Rts. N.C. v. North Carolina State Bd. of

Elections*, No. 5:21-CV-361, 2022 WL 2678884, at *4 (E.D.N.C. July 11, 2022);

*see also Carey v. Wisconsin Elections Comm'n*, 624 F. Supp. 3d 1020, 1033 (W.D.

Wis. 2022). Section 208 similarly preempts Mississippi's law.

## CONCLUSION

This Court should affirm the district court's ruling that Section 208 of the

Voting Rights Act preempts Mississippi's law as applied to voters needing

assistance to return their ballots because of blindness, disability, or inability to read

or write.

<div style="margin-left:40%">

Respectfully submitted,

KRISTEN CLARKE
  Assistant Attorney General

s/ Brant S. Levine
NICOLAS Y. RILEY
BRANT S. LEVINE
  Attorneys
  U.S. Department of Justice
  Civil Rights Division
  Appellate Section
  Ben Franklin Station
  P.O. Box 14403
  Washington, D.C.  20044-4403
  (202) 616-4373

</div>

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rules of Appellate Procedure 29(a)(5) and 32(a)(7)(B)(i) because it contains 3606 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f). This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it was prepared in Times New Roman 14-point font using Microsoft Word for Microsoft 365.

<div align="right">

s/ Brant S. Levine
BRANT S. LEVINE
 Attorney

</div>

Date:  January 23, 2024