**No. 23-60463**

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

DISABILITY RIGHTS MISSISSIPPI, *et al.,*
*Plaintiffs-Appellees,*
v.
LYNN FITCH, in her official capacity as Mississippi Attorney General, *et al.*
*Defendants-Appellants*,

On Appeal from the United States District Court
for the Southern District of Mississippi
No. 3:23-cv-350
Hon. Henry T. Wingate

**BRIEF OF *AMICI CURIAE* NATIONAL DISABILITY RIGHTS NETWORK
AND DISABILITY RIGHTS TEXAS**

CHRISTOPHER P. McGREAL
Disability Rights Texas
1420 W. Mockingbird Lane, Ste. 450
Dallas, Texas 75247
Phone: (214) 845-4056
cmcgreal@drtx.org

PETER HOFER
Disability Rights Texas
2222 W. Braker Lane
Austin, Texas 78758
Tel: (512) 454-4816
phofer@disabilityrightstx.org

THOMAS STENSON
Disability Rights Oregon
510 S.W. 10th Avenue, Suite 200
Portland, Oregon 97205
Tel: 503-243-2081
tstenson@droregon.org

*Counsel for Amici Curiae National Disability Rights Network
and Disability Rights Texas*

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to 5th Cir. R. 29.2 (contents and forms), I hereby certify that in addition to the persons and entities listed in the Appellant's Certificate of Interested Persons, the following persons and entities have an interest in the outcome of the case under 5th Cir. R. 28.2.1 (certificate of interested persons). These representations are made so judges may evaluate potential recusal.

### *Plaintiffs-Appellants*

Mamie Cunningham

Disability Rights Mississippi

Yvonne Gunn

League of Women Voters of Mississippi

William Earl Whitley

### *Attorneys for Plaintiffs-Appellants*

Ming Chung

Bradley Heard

Leslie Faith Jones

Sabrina Kahn

Sophia Lin Lakin

Greta Martin

Robert Bruce McDuff

Ari Savitzky

Casey Katharine Smith

Ahmed Soussi

Joshua Tom

### ***Defendants-Appellees***

Lynn Fitch, in her official capacity as Mississippi Attorney General

Michael D. Watson, Jr., in his official capacity as Secretary of State of Mississippi

### ***Attorneys for Defendants-Appellees***

Justin Lee Matheny

Douglas T. Miracle, Assistant Attorney General

### ***Amici Curiae***

National Disability Rights Network

Disability Rights Texas

### ***Attorneys for Amici Curiae***

Christopher McGreal

Peter Hofer

Thomas Stenson

**STATEMENT REGARDING ORAL ARGUMENT**

Attorneys for Amici Curiae defer to the judgment of the Court on whether oral argument from this Amici Curiae would assist the Court. Required by 5th Cir. R. 28.2.3 (request for oral argument) and Fed. R. App. P. 34(a)(1).

# TABLE OF CONTENTS

**Section**                                                                                      **Page**

Table of Contents ............................................................................................iv

Table of Authorities.........................................................................................vi

I.      Interest of *Amici* ...............................................................................1

II.     Summary of Argument .........................................................................4

III.    ARGUMENT.........................................................................................5

A. DRMS, as a Protection and Advocacy System, Has a Unique Claim to Representational Standing as an Agency Specifically Created by Congress to Take Legal Action to Protect People with Disabilities..........5

1. DRMS Seeks Relief on Behalf of its Constituents, Mississippi Voters with Disabilities, Who Have Standing in Their Own Right .9

a. DRMS Constituents Are Mississippi Voters with Disabilities, the Functional Equivalent of Members..................................9

b. DRMS's Constituents Would Have Standing to Sue in Their Own Right ........................................................................17

2. DRMS's Statutorily Defined Role of Protecting the Rights of Voters with Disabilities Renders This Litigation Germane to DRMS's Purpose ........................................................................19

3. DRMS May Participate as a Representative, Even in the Absence of an Individual Constituent of DRMS...............................................20

a. For P&As, Individual Participation of its Constituents is Waived by Federal Law .......................................................20

b. Even if Congress Had Not Abrogated the Requirement for Individual Participation in P&A Litigation, the Facts and Circumstances of This Case Do Not Require Individual Participation of Each Constituent ........................................21

4. People With Disabilities Who Already Experience Barriers in Delivering a Ballot in Person May Be Similarly Prevented from

Suing on Their Own or Joining a Formal Membership
Organization ....................................................................23

IV. Conclusion.........................................................................26

Corporate Disclosure Statement ...........................................28

Certificate of Service ............................................................30

Certificate of Rule 32(g) Compliance....................................31

**TABLE OF AUTHORITIES**

**Authorities**                                                                                    **Page**

*Cases*

*Advoc. Ctr. for Elderly & Disabled v. Louisiana Dep't of Health & Hosps.,*
     731 F. Supp. 2d 583 (E.D. La. 2010) ...................................................... 11

*Ass'n for Retarded Citizens of Dallas v. Dallas Cnty. Mental Health & Mental*
     *Retardation Ctr. Bd. of Trustees,*
     19 F.3d 241 (5th Cir. 1994).................................................................. 10,11

*Ass'n of Am. Physicians & Surgeons, Inc. v. Texas Med. Bd.,*
     627 F.3d 547 (5th Cir. 2010)........................................................................ 21

*Brown v. Stone,*
     66 F. Supp. 2d 412 (E.D.N.Y. 1999) ......................................................... 7, 14

*Church of Scientology of California v. Cazares,*
     638 F.2d 1272 (5th Cir. 1981) ............................................................... 10, 22

*Conn. Off. of Prot. & Advoc. for Persons with Disabilities v. Connecticut,*
     706 F. Supp. 2d 266 (D. Conn. 2010) ........................................................... 16

*Conn. Off. of Prot. & Advoc. For Persons with Disabilities v. Hartford Bd. of*
     *Educ.,*
     464 F.3d 229 (2d Cir. 2006) ......................................................................... 6

*Cunningham v. Fed. Bureau of Prisons,*
     222 F. Supp. 3d 959 (D. Colo. 2015)............................................................ 16

*Disability Advocates, Inc. v. Paterson,*
     598 F. Supp. 2d 289 (E.D.N.Y. 2099)........................................................... 14

*Disability Rights North Carolina v. North Carolina State Board of Elections,*
     5:21-CV-361-BO, 2022 WL 2678884 (July 11, 2022, E.D.N.C.) ............ 6, 7

*Disability Rights North Carolina v. North Carolina State Board of Elections,*
     602 F. Supp. 3d 872 (E.D.N.C. 2022) ............................................................ 7

*Disability Rights. Wisconsin, Inc. v. Walworth Cnty. Bd. of Supervisors,*
   522 F.3d 796 (7th Cir. 2008) ...................................................15, 20

*Doe v. Stincer,*
   175 F.3d 879 (11th Cir. 1999)...........................................14, 15, 20

*Dunn v. Dunn,*
   219 F. Supp. 3d 1163 (M.D. Ala. 2016) ................................16, 20

*Flyers Rts. Educ. Fund, Inc. v. United States Dep't of Transportation,*
   957 F.3d 1359 (D.C. Cir. 2020) ...................................................10

*Friends of the Earth, Inc. v. Laidlaw Env't Servs.,*
   528 U.S. 167 (2000) .....................................................................17

*Goldstein v. Coughlin,*
   83 F.R.D. 613 (W.D.N.Y. 1979) .....................................................8

*Hunt v. Washington State Apple Advert. Comm'n,*
   432 U.S. 333 (1977) .............................................................. *passim*

*Indiana Prot. & Advoc. Servs. v. Indiana Dep't of Corrections,*
   642 F. Supp. 3d 872 (S.D. Ind. 2009).........................................16

*Indiana Prot. & Advoc. Servs. v. Indiana Fam. & Soc. Servs. Admin.,*
   603 F.3d 365 (7th Cir. 2010).......................................................14

*Indiana Prot. & Advoc. Servs. v. Indiana Fam. & Soc. Servs. Admin.,*
   630 F. Supp. 3d 1022 (S.D. Ind. 2022).......................................14

*J.R. by Analisa R. v. Austin Indep. Sch. Dist.,*
   574 F. Supp. 3d 428 (W.D. Tex. 2021) .......................................14

*Joseph S. v. Hogan,*
   561 F. Supp. 2d 280 (E.D.N.Y. 2008) .........................................15

*Larkin v. State of Mich. Dep't of Soc. Servs.,*
   89 F.3d 285 (6th Cir. 1996) ........................................................15

*Mississippi Prot. & Advoc. Sys., Inc. v. Cotten,*
   929 F.2d 1054 (5th Cir. 1991)................................................6, 24

*Missouri Prot. & Advoc. Servs., Inc. v. Carnahan,*
     499 F.3d 803 (8th Cir. 2007)..............................................................15

*New Jersey Prot. & Advoc., Inc. v. Davy,*
     No. CIV. 05-1784 (SRC), 2005 WL 2416962 (D.N.J. Sept. 30, 2005) .......14

*New York State Club Ass'n, Inc. v. City of New York,*
     487 U.S. 1 (1988).................................................................22, 23

*OCA-Greater Houston v. Texas,*
     867 F.3d 604 (5th Cir. 2017)...........................................................5

*Oregon Advoc. Ctr. v. Mink,*
     322 F.3d 1101 (9th Cir. 2003)...................................................14, 16, 20

*Pennsylvania Prot. & Advoc., Inc. v. Houstoun,*
     228 F.3d 423 (3d Cir. 2000) ..........................................................24

*Pennsylvania Prot. & Advoc., Inc. v. Houston,*
     136 F. Supp. 2d 353 (E.D. Pa. 2001) ........................................20, 21

*Procurador De Personas Con Impedimentos v. Municipality of San Juan,*
     541 F. Supp. 2d 468 (D.P.R. 2008) ..............................................15

*Risinger v. Concannon,*
     117 F. Supp. 2d 61 (D. Me. 2000) ..............................................20

*Rubenstein v. Benedictine Hosp.,*
     790 F. Supp. 396 (N.D.N.Y. 1992) ...............................................8

*Spokeo, Inc. v. Robins,*
     578 U.S. 330 (2016).....................................................................18

*Tennessee Prot. & Advoc., Inc. v. Metro. Gov't of Nashville & Davidson Cnty.,*
     No. 3-95-0793, 1995 WL 1055174 (M.D. Tenn. Nov. 14, 1995).................14

*Trautz v. Weisman,*
     846 F. Supp. 1160 (S.D.N.Y. 1994) .........................................7, 15

*Trump v. Int'l Refugee Assistance Proj.,*
     582 U.S. 571 (2017).....................................................................5

*United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.,*
    517 U.S. 544 (1996)...................................................................20

*Univ. Legal Servs., Inc. v. St. Elizabeths Hosp.,*
    No. CIV. 105CV00585TFH, 2005 WL 3275915 (D.D.C. July 22, 2005)....15

*Unzueta v. Schalansky,*
    No. 99-4162-RDR, 2002 WL 1334854 (D. Kan. May 23, 2002)................21

*Virginia Off. for Prot. & Advoc. v. Stewart,*
    563 U.S. 247 (2011)...................................................................5

*Waldrop v. New Mexico Hum. Servs. Dep't,*
    No. CV 14-047 JH/KBM, 2015 WL 13665460 (D.N.M. Mar. 10, 2015)....15

*Warth v. Seldin,*
    422 U.S. 490 (1975)...................................................................17

*Wilson v. Thomas,*
    43 F. Supp. 3d 628 (E.D.N.C. 2014) .........................................14

**Statutes**

29 U.S.C. § 794e ........................................................................5

29 U.S.C. § 794e(f)(2) ................................................................6

42 U.S.C. § 10801, *et seq.*..........................................................5

42 U.S.C. § 10801(a) ..................................................................23

42 U.S.C. § 10801(a)(2) ..............................................................24

42 U.S.C. § 10805(a)(1)(B) ........................................................6, 7

42 U.S.C. § 10805(a)(1)(C) .........................................................7

42 U.S.C. § 10805(a)(6) ..............................................................12

42 U.S.C. § 10805(c) ..................................................................13

42 U.S.C. § 10805(c)(2) ..............................................................13

42 U.S.C. § 15001 .......................................................................................23

42 U.S.C. § 15041, *et seq.*.............................................................................5

42 U.S.C. § 15043(a)(2) ...................................................................................6

42 U.S.C. § 15043(a)(2)(D)............................................................................12

42 U.S.C. § 15044(a)(1)..................................................................................12

52 U.S.C. § 10508 ..........................................................................................18

52 U.S.C. § 21061 ....................................................................................2, 4, 5

52 U.S.C. § 21061(a).....................................................................................20

Miss. Code Ann. 23-15-907 ..........................................................................18

## Regulations

42 C.F.R. § 51.22 ...........................................................................................13

45 C.F.R. § 1326.24 .........................................................................................6

## Rules

Fed. R. App. P. 29 (a)(4)(E) ............................................................................3

5th Cir. R. 29 ...................................................................................................5

## Other Sources

*Developmental Disabilities Assistance and Bill of Rights Act Amendments of 1993*,
     S. Rep. 103-120, 103rd Cong., 1st Sess. 1993, 1994 U.S.C.C.A.N. 16...8, 23

## I.      INTEREST OF *AMICI*

This brief is submitted on behalf of *amici curiae* the National Disability Rights Network (NDRN) and Disability Rights Texas (DRTx). NDRN is the non-profit membership organization of the federally mandated Protection and Advocacy (P&A) and Client Assistance Program (CAP) agencies for individuals with disabilities. The P&A and CAP agencies were established by the United States Congress to protect the rights of people with disabilities and their families through legal support, advocacy, referral, and education. There are P&As and CAPs in all 50 states, the District of Columbia, Puerto Rico, and the U.S. Territories (American Samoa, Guam, Northern Mariana Islands, and the US Virgin Islands), and a P&A and CAP affiliated with the Native American Consortium which includes the Hopi, Navajo, and San Juan Southern Paiute Nations in the Four Corners region of the Southwest. Collectively, the P&A and CAP agencies are the largest provider of legally based advocacy services to people with disabilities in the United States.

Disability Rights Texas (DRTx) is the designated P&A organization for Texas. DRTx was founded pursuant to federal law establishing P&A systems in each state and territory, and as such, have been charged with the responsibility to advocate for individuals with disabilities for decades since 1977.

As *Amici*, NDRN and DRTx have a strong interest in ensuring that P&As can carry out their mission to provide services to individuals with disabilities under

a series of federal programs, including Protection and Advocacy for Voting Access, established through the Help America Vote Act. *See, e.g.*, 52 U.S.C. 21061. Amici NDRN collaborates with P&As and their constituents to consider the best strategies for fulfilling their respective missions, which include seeking legal remedies for wrongs suffered by voters with disabilities, and providing other forms of advocacy to defend the rights of those individuals. As such, amici have a critical interest in ensuring that the federal courts continue to acknowledge the ability of P&A organizations to bring lawsuits on behalf of their constituents.

## RULE 29 CERTIFICATE

Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), *amici curiae* certify that no part of this brief was authored by counsel for either party; that no party nor party's counsel contributed money used in preparing or submitting the brief; and that no person or entity, outside of *amici curiae* and their counsel, contributed any money towards the funding of the preparation or submission of the brief.

## II.    SUMMARY OF ARGUMENT

P&A organizations, including Disability Rights Mississippi (DRMS), have unique standing and a unique role in litigation related to the rights of people with disabilities. P&As engage in a range of advocacy activities to ensure the equal opportunity of voters with disabilities to practice their right to vote, pursuant to the Protection and Advocacy for Voting Access (PAVA) program, established through the Help America Vote Act. *See, e.g.*, 52 U.S.C. § 21061. These activities at DRMS and other P&As necessarily include litigation and other forms of advocacy to ensure that voters with disabilities have an equal opportunity to exercise their right to vote. DRMS and other P&As ensure that voters with disabilities receive the full protections of the Voting Rights Act, the Americans with Disabilities Act, and other related state and federal laws protecting that sacred right.

Along with other essential advocacy services that P&As regularly provide, such as rights training, public exposure of abuse, and negotiation with policy makers and service providers, litigation is an important means to protect the rights of people with disabilities wherever and whenever necessary. *Amici* submit this brief in support of DRMS because it is critical that P&As have standing to bring suit in federal courts to ensure effective remedies for violations of the NVRA, the ADA, and other laws protecting the rights of voters with disabilities.

## III. ARGUMENT

### A. DRMS, as a Protection and Advocacy System, Has a Unique Claim to Representational Standing as an Agency Specifically Created by Congress to Take Legal Action to Protect People with Disabilities[1]

Congress created a network of statewide protection and advocacy systems to protect the rights of people with developmental disabilities, 42 U.S.C. § 15041, *et seq.* ["DD Act"], the rights of people with mental illnesses, 42 U.S.C. § 10801, *et seq.* ["PAIMI Act"], the rights of other people with other disabilities not covered by the other two acts, 29 U.S.C. § 794e ["PAIR Act"], and the rights of voters with disabilities. 52 U.S.C. § 21061; *see generally Virginia Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 251 (2011) (describing nature of P&A systems). Considering all three P&A Acts together—the DD Act, the PAIMI Act, and the PAIR Act—Congress has designated P&As to advocate for people with any kind of

---

[1] Consistent with 5th Circuit Rule 29.2, *Amici* rely on the statements of fact and procedural history supplied by the litigants. While the focus of the brief relates to unique standing for P&As, this brief's focus should not be read as a concession that the scope of the injunction was inappropriate, absent a finding of P&A standing. *See, e.g., Trump v. Int'l Refugee Assistance Proj.*, 582 U.S. 571, 579-82 (2017) (approving narrowed preliminary injunction extending to plaintiffs and those "similarly situated" in the immigration process, even in the absence of an approved class or organizational plaintiff). Similarly, this brief and its focus should not be read as a concession that the organizational plaintiffs failed to show standing in their own right. *OCA-Greater Houston v. Texas*, 867 F.3d 604, 612 (5th Cir. 2017) (finding "additional time and effort spent explaining" election law adequately established organizational injury-in-fact to support organizational standing). Neither should the brief's focus on the standing of DRMS be taken as a concession that the other organizational plaintiff lacks standing, in either a representational or organizational capacity.

disability in their home state or jurisdiction. *Connecticut Off. of Prot. & Advoc. For Persons with Disabilities v. Hartford Bd. of Educ.*, 464 F.3d 229, 233-34 (2d Cir. 2006) (summarizing the scope and history of the PAIMI, DD, and PAIR Acts).

In establishing the P&A's role protecting the rights of people with developmental disabilities, for instance, Congress passed the DD Act, giving all P&As the "authority to . . . pursue legal, administrative, and other remedies or approaches" to vindicate the rights of people with developmental disabilities. 42 U.S.C. § 15043(a)(2); *Mississippi Prot. & Advoc. Sys., Inc. v. Cotten*, 929 F.2d 1054, 1055 (5th Cir. 1991). DD Act rules specifically contemplate the P&A "bringing lawsuits *in its own right* to redress incidents of abuse or neglect, discrimination, and other rights violations." 45 C.F.R. § 1326.24 (emphasis added).

Other laws, such as the PAIR Act and PAIMI Act, provide the P&As with the same "general authorities" which included the authority to bring litigation as under the DD Act to protect the rights of persons with disabilities. 29 U.S.C. § 794e(f)(2) (giving P&A "same general authorities" under PAIR Act to act on behalf of people with disabilities generally as the DD Act grants regarding people with developmental disabilities); 42 U.S.C. § 10805(a)(1)(B) (granting P&A similar authority under PAIMI Act to "pursue administrative, legal, and other appropriate remedies" to protect people with mental illness"). These powers include litigation to protect the right to vote for persons with disabilities. *See. e.g., Disability Rights*

*North Carolina v. North Carolina State Board of Elections*, 5:21-cv-361-BO, 2022 WL 2678884 (July 11, 2022, E.D.N.C.) (affirming P&A's standing to bring suit) and 602 F. Supp. 3d 872, 875 (E.D.N.C. 2022) (finding a violation for the Voting Rights Act).

The statutory structure further underscores the intended function of the role of the P&A in suing as a representative organization, rather than merely serving as an attorney for individuals with disabilities. Under the PAIMI Act, Congress paired the broad language about P&A "authority to . . . pursue legal, administrative, and other appropriate remedies" to protect people with disability generally, 42 U.S.C. § 10805(a)(1)(B), with a separate provision enunciating specific power to "pursue administrative legal, and other remedies *on behalf of an individual*. . . ." 42 U.S.C. § 10805(a)(1)(C)(emphasis added). Congress, by articulating separately the P&A's function of direct representation of the individual, clearly indicated a different and broader meaning of the authority to "pursue administrative, legal, and other appropriate remedies" to protect people with disabilities generally. *Trautz v. Weisman*, 846 F. Supp. 1160, 1163 (S.D.N.Y. 1994) ("[I]f Congress merely intended for state systems to act as advocates on behalf of mentally individuals, it would not have included (a)(1)(B) in the statute in addition to (a)(1)(C)."); *Brown v. Stone*, 66 F. Supp. 2d 412, 425 (E.D.N.Y. 1999) (same). Throughout the various

P&A acts, Congress repeatedly clarifies the broad authority of P&As to litigate on behalf of people with disabilities.

Thirty years ago, Congress explicitly considered the question of whether to make more explicit the right of a P&A to have standing in litigation on behalf of people with disabilities. *Developmental Disabilities Assistance and Bill of Rights Act Amendments of 1993,* S. Rep. 103-120, 39, 103rd Cong., 1st Sess. 1993, 1994 U.S.C.C.A.N. 164, 202. A Senate committee heard "testimony about the waste of scarce resources . . . expended on litigating whether P&A systems have standing to bring suit." *Id.* The Committee found that "no statutory fix [was] necessary because the current statute is clear that P&A systems have standing to pursue legal remedies" on behalf of people with disabilities. *Id*. Congress at that time specifically cited two cases as appropriately describing P&A standing. *Goldstein v. Coughlin*, 83 F.R.D. 613, 614 (W.D.N.Y. 1979) (P&A has standing to bring lawsuit against center for people with developmental disabilities to vindicate rights of people with disabilities); *Rubenstein v. Benedictine Hosp*., 790 F. Supp. 396, 409 (N.D.N.Y. 1992) (same, regarding a hospital).

Generally, an organization can seek relief on behalf of its constituents where the constituents "would otherwise have standing in their own right," the interests the organization seeks to protect are "germane to the organization's purpose," and participation by individual members is required by either the nature of the claim or

the relief sought. *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 342 (1977). DRMS meets the *Hunt* factors to establish its standing.

### 1. DRMS Seeks Relief on Behalf its Constituents, Mississippi Voters with Disabilities, Who Have Standing in Their Own Right

In assessing the first prong of the *Hunt* test, whether an organization's "members would otherwise have standing to sue in their own right," the Court must assess two separate questions: who the members (or their functional equivalent) of DRMS are and, once identified, whether those members would have standing to sue in their own right. *Hunt*, 432 U.S. at 344 (holding "only question presented" on the record was whether agency other than "traditional voluntary membership organization" was precluded from asserting claims of constituents).

### a. DRMS Constituents Are Mississippi Voters with Disabilities, the Functional Equivalent of Members

While the *Hunt* factors are often cited as if they were exclusive to conventional *membership* organizations, the *Hunt* case itself was about a state-funded apple advocacy commission, with no voluntary members. *Id.* at 342 ("If the Commission were a voluntary membership organization . . ., its standing to bring this action . . . would be clear. . . ."). By describing the non-member apple growers for whose interests the Commission advocated as "constituents," *Hunt* put non-membership organizations that advocate for their constituents on similar footing as membership-based organizations. *Id.* at 345. The apple growers "possess[ed] all the

indicia of membership," electing the membership, serving on the Commission, and funding the organization. *Id.*

The indicia of membership factors discussed in *Hunt* are points of guidance, not absolute requirements. *Flyers Rts. Educ. Fund, Inc. v. United States Dep't of Transportation*, 957 F.3d 1359, 1362 (D.C. Cir. 2020) (finding that air passenger advocacy organization had demonstrated a "sufficient amount of interaction" between putative representative organization and passengers, even if passengers did not elect the leadership of the organization). The Fifth Circuit has historically held that "the requisite for representational standing in this circuit is not necessarily an explicit statement of representation but a close nexus between the organization and its members." *Church of Scientology of California v. Cazares*, 638 F.2d 1272, 1278 (5th Cir. 1981). The P&A constituents meet both the "close nexus" standard and the *Hunt* factors in their relationship to the P&A.

In prior proceedings in this Circuit, an earlier inquiry into P&A standing and whether its constituents were the functional equivalent of members was cut short by an apparent failure to plead certain arguments and present certain evidence in a timely way. When the Texas P&A tried to raise its unique standing issues 30 years ago, its apparent failure to plead certain facts and cite certain arguments before the trial court prevented the appellate court from considering a more developed record. *Ass'n for Retarded Citizens of Dallas v. Dallas Cnty. Mental Health & Mental*

*Retardation Ctr. Bd. of Trustees*, [19 F.3d 241, 243](#) n.4 (5th Cir. 1994) (refusing to consider on appeal "new legal arguments" and "documents never presented to the district court" and ruling against P&A). Here, by contrast, DRMS has timely provided declarations and citations to the trial court substantially confirming that its constituents "participate in and guide the organization's efforts." *Id.* at 244. Of note, the Texas P&A in the *ARC of Dallas* case specifically addressed only the rights of people with developmental disabilities and thus its authorities under the DD Act, while the present matter raises larger questions about the full authority of the P&A under the PAIMI and PAIR Acts as well. The *ARC of Dallas* case also came long before the extensive benefit of dozens of lawsuits before other district and circuit courts developed stronger records of the degree to which people with disabilities managed and directed the agencies. *See, e.g., Advoc. Ctr. for Elderly & Disabled v. Louisiana Dep't of Health & Hosps.*, [731 F. Supp. 2d 583, 595-596](#) (E.D. La. 2010) (extensively discussing and distinguishing the facts of case at bar from *ARC of Dallas*, placing particular weight on the extensive evidence that constituents of Louisiana P&A "bear many of the traditional indicia of membership in those organizations"); *see also discussion infra* at 13-14.

DRMS specifically alleged in a declaration before the trial court that it "represents the interests of, and is accountable to, members of the DRMS disability community," and that its Board of Directors contains people with disabilities and

11

people who have family members with disabilities. ROA.82-83. Likewise, its PAIMI Advisory Council is "comprised of people who have psychiatric disabilities, or are family members of, or work directly with, people with psychiatric disabilities." ROA.82-83. That council provides substantial guidance, advice, and recommendations about the organization's direction. ROA.82-83.

Not only is the structure of DRMS's Board and advisory groups affirmed by declaration to require that people with disabilities be the fundamental driving force behind the organization, federal law requires that people with disabilities direct the priorities of the P&A as well. As affirmed in the declaration, DRMS's "funding is dependent on compliance with a governance structure that ensures oversight and control by the disability community. ROA.82-83. The law requires, for instance, that the P&A routinely allow people with any kind of developmental disabilities a routine, annual opportunity to comment on the "goals and priorities established by the" P&A and its activities. 42 U.S.C. § 15043(a)(2)(D). A majority of members of the P&A board must be individuals with disabilities or parents, family members, guardians, advocates, or authorized representatives of such individuals. 42 U.S.C. § 15044(a)(1). Under the Protection and Advocacy for Individuals with Mental Illness (PAIMI) Act, similar requirements for representation on the Board of Directors and advisory boards pertain. 42 U.S.C. § 10805(a)(6) (establishing advisory committee led by a person with mental illness or family member of a

12

person with a mental illness and of which 60% of membership must be people with mental illness or family members); 42 U.S.C. § 10805(c) & 42 C.F.R. § 51.22 (a nonprofit P&A Board like DRMS—i.e., excluding P&As that are government agencies—must have members who "broadly represent or are knowledgeable about the needs of clients served by the P&A system and shall include a significant representation of individuals with mental illness. . . . and family members, guardians, advocates, or authorized representatives of such individuals"). Those governing bodies are "responsible for the planning, design, implementation, and function of the system" as well as the annual priorities of the P&A. 42 U.S.C. § 10805(c)(2).

Considering both the extensive factual development by declaration showing that DRMS is led by and accountable to people with disabilities and the substantial legal requirements in statute and rule that require the P&A to be guided by people with disabilities and those closest to them, DRMS has met its burden to show that people with disabilities "participate in and guide" DRMS's "efforts." Based on that showing, one can readily determine that Mississippians with disabilities, including Mississippi voters with disabilities, are bona fide constituents of DRMS within the meaning of the *Hunt* criteria.

A finding that people with disabilities are the constituents of a P&A would be consistent with the majority of the circuits and other courts that have considered

this issue. *See, e.g., Doe v. Stincer*, 175 F.3d 879, 886 (11th Cir. 1999) (based on the record and statutory authority, a P&A is "analogous to the Apple Advertising Commission in *Hunt*" and may "sue on behalf of its constituents like a more traditional association may sue on behalf of its members"); *Oregon Advoc. Ctr. v. Mink*, 322 F.3d 1101, 1110 (9th Cir. 2003) (following *Stincer*); *Indiana Prot. & Advoc. Servs. v. Indiana Fam. & Soc. Servs. Admin.*, 603 F.3d 365, 375 (7th Cir. 2010) (holding PAIMI "Act further provides that the [P&A] system shall have the power to bring legal actions to ensure the protection of its constituents and to litigate on behalf of its constituents"); *J.R. by Analisa R. v. Austin Indep. Sch. Dist.*, 574 F. Supp. 3d 428, 436 (W.D. Tex. 2021) (finding representational standing for P&A based on its statutory designation); *Indiana Prot. & Advoc. Servs. Comm'n v. Indiana Fam. & Soc. Servs. Admin.*, 630 F. Supp. 3d 1022, 1029 (S.D. Ind. 2022); *Wilson v. Thomas*, 43 F. Supp. 3d 628, 632 (E.D.N.C. 2014) ("Disability Rights [North Carolina] is a protection and advocacy organization whose characteristics are similar to the Washington State Apple Advertising Commission which the Supreme Court found to have associational standing in Hunt"); *New Jersey Prot. & Advoc., Inc. v. Davy*, No. CIV. 05-1784 (SRC), 2005 WL 2416962, at *3 (D.N.J. Sept. 30, 2005); *Tennessee Prot. & Advoc., Inc. v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 3-95-0793, 1995 WL 1055174, at *1 (M.D. Tenn. Nov. 14, 1995); *Disability Advocs., Inc. v. Paterson*, 598 F. Supp. 2d 289, 308 (E.D.N.Y.

2009); *Trautz*, 846 F. Supp. at 1163; *Brown*, 66 F. Supp. 2d at 425; *Joseph S. v. Hogan*, 561 F. Supp. 2d 280, 306 (E.D.N.Y. 2008); *Univ. Legal Servs., Inc. v. St. Elizabeths Hosp*., No. CIV. 105CV00585TFH, 2005 WL 3275915, at *4 (D.D.C. July 22, 2005); *Waldrop v. New Mexico Hum. Servs. Dep't*, No. CV 14-047 JH/KBM, 2015 WL 13665460, at *6 (D.N.M. Mar. 10, 2015); *Procurador De Personas Con Impedimentos v. Municipality of San Juan*, 541 F. Supp. 2d 468, 471 (D.P.R. 2008); *cf. Disability Rts. Wisconsin, Inc. v. Walworth Cnty. Bd. of Supervisors*, 522 F.3d 796, 803 (7th Cir. 2008) (agreeing with both parties that P&A constituents were functional equivalent of members but denying a finding of injury-in-fact); *Larkin v. State of Mich. Dep't of Soc. Servs*., 89 F.3d 285, 288 (6th Cir. 1996) (noting without comment that Michigan P&A had been permitted to intervene of right because it "had a federal mandate to protect the rights" of people with disabilities); *but see Missouri Prot. & Advoc. Servs., Inc. v. Carnahan*, 499 F.3d 803, 810 (8th Cir. 2007) (assuming that people with disabilities, contrasted with the nexus of apple growers to the commission in *Hunt*, had "no such relationship to" the P&A).

In particular, many of these cases have outlined extensively the factual control people with disabilities exert over each P&A and the legal requirements for that degree of control. *See, e.g.*, *Stincer*, 175 F.3d at 886 (relying on legal requirement of "multimember boards" and "advisory councils" that must be

comprised primarily of people with disabilities and their family members, as well as grievance and priority setting processes oriented around people with disabilities); *Mink*, 322 F.3d at 1111-12 (relying on legal requirements that P&A have grievance system to ensure responsiveness to disability community, requirements for advisory counsel led by people with disabilities and board involvement by people with disabilities, as well as factual testimony that people with disabilities comprised majority of board members and advisory council); *Cunningham v. Fed. Bureau of Prisons*, 222 F. Supp. 3d 959, 961-64 (D. Colo. 2015) (extensively describing nature and extent of direction of Colorado P&A by people with disabilities); *Indiana Prot. & Advoc. Servs. v. Indiana Dep't of Corrections*, 642 F. Supp. 3d 872, 875-76 (S.D. Ind. 2009) (discussing representation of people with disabilities on P&A board and council, finding standing); *Dunn v. Dunn*, 219 F. Supp. 3d 1163, 1167-68 (M.D. Ala. 2016)(same); *Connecticut Off. of Prot. & Advoc. for Persons with Disabilities v. Connecticut*, 706 F. Supp. 2d 266, 273 (D. Conn. 2010) (finding standing for P&A, noting legal standards for composition of board and council, noting particularly that 9 of 10 members of advisory council are recipients of mental health services). Three decades of case law clarifying the extent and nature of the control of people with disabilities over P&As generally, in addition to the strong Mississippi-specific record of the extensive engagement of Mississippians with disabilities in the

operations of DRMS, should allow the Court to assess that people with disabilities are the functional equivalent of members of the P&A.

### b. DRMS's Constituents Would Have Standing to Sue in Their Own Right

Mississippi voters with disabilities—DRMS's constituents—would have standing to sue individually. Some have done so, and the Mississippi appellants agree that some individual plaintiffs have standing to do so. Standing depends on a plaintiff experiencing 1) an injury-in-fact, 2) traceable to the defendants, and 3) likely to be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Env't Servs.*, 528 U.S. 167, 181 (2000). DRMS's constituents meet all three components of standing.

In the present case, no party seriously challenges the idea that the enforcement of the Mississippi statute is fairly traceable to the state defendants. The Court can readily determine that voters with disabilities aggrieved by the law's actions would be redressed by favorable relief. *Warth v. Seldin*, 422 U.S. 490, 515 (1975) ("If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured."). Here, the Court can reasonably assume that the primary beneficiaries of an injunction protecting Mississippi "voters who are disabled or blind or who have

limited ability to read or write" will include the constituents of DRMS. The standing analysis should focus on the injury-in-fact prong.

An injury-in-fact is an invasion of a legal interest that is concrete and particularized and actual and imminent. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). Where Congress created a particular statutory right by establishing a substantive, rather than procedural, requirement, a violation of that substantive right is itself an injury in fact. *Id*. Here, Congress created in the VRA a specific right to receive assistance from "a person of the voter's choice. . . ." 52 U.S.C. § 10508. By shrinking the list of those eligible to offer such assistance to a tiny, and sometimes nonexistent, fraction of the world of friends and other trusted parties in the general community of a person with a disability, Mississippi has directly infringed a specific protected right to have the assistant of one's choice and, in some circumstances, may prevent certain voters with disabilities from voting at all. DRMS constituents meet the requirements of an injury-in-fact.

Mississippi's new statute creates a very limited list of people who may transmit a ballot on behalf of a voter. Miss. Code Ann. 23-15-907. Leaving aside several categories of people who handle mail and delivery services, the only other individuals who can assist a voter with disabilities are election officials and a "family member, household member, or caregiver of" the voter. *Id.* Creating such a short list of possible assistants effectively disenfranchises voters with disabilities

who need assistance. Based on decades of experience working closely with the P&A Network and people with disabilities, *amici* can readily assure the Court that many people with disabilities live alone, do not have a routine caregiver, and may have no family who can assist them in mailing their ballots—whether because their family members live far away, are estranged, or have passed on. *See, e.g.*, ROA.98-99 (Mr. Whitley testifies: "I live alone, I do not have a caregiver, and I do not have family members who live in Okolona."). The right to vote should not depend on whether one has a roommate, caregiver, or a close family member.

The Court can also readily anticipate that some people with disabilities who do have a qualifying caregiver, family member, or household member will find situations where the potential assistant might be unavailable or unable to assist with voting at the appropriate time. A person with a disability should have the right to select a friend outside their own household or some other trusted individual to assist them in turning in their ballot.

## 2. DRMS's Statutorily Defined Role of Protecting the Rights of Voters with Disabilities Renders This Litigation Germane to DRMS's Purpose

Perhaps the most obvious element of the *Hunt* factors, DRMS's role in the litigation is germane to its purpose. DRMS is specifically required by federal law to "ensure full participation in the electoral process for individuals with disabilities, including registering to vote, casting a vote, and accessing polling

places. 52 U.S.C. § 21061(a). DRMS's participation in litigation to vindicate the interests of people with disabilities to obtain assistance from a person of their choice plainly falls with the germane purposes of the organization. Similarly, the requirements in the DD Act, the PAIMI Act, and the PAIR Act, that DRMS act to protect the rights of people with all disabilities impose unique interests and focus on ensuring the rights of people with disabilities, including the right to vote and to have the assistants of their choice to support them in every aspect of their lives.

### 3. DRMS May Participate as a Representative, Even in the Absence of an Individual Constituent of DRMS

#### a. For P&As, Individual Participation of its Constituents is Waived by Federal Law

The Court can and should find that the federal statutes creating P&As have had the effect of waiving the third prong of the *Hunt* test. "[T]here is no question that Congress may abrogate the impediment" of the third *Hunt* prong. *United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*, 517 U.S. 544, 558 (1996) (finding that Congress did so by passing the WARN Act and deputizing unions to sue on behalf of workers for backpay). Other courts have found that Congress did abrogate the third *Hunt* prong by passing the various P&A Acts. *Mink*, 322 F.3d at 1113 (9th Cir. 2003); *Stincer*, 175 F.3d at 882-83 (11th Cir. 1999); *Disability Rights Wis*., 522 F.3d at 802; *Dunn*, 219 F. Supp. 3d at 1172 (M.D. Ala. 2016)(citing cases); *Pennsylvania Prot. & Advoc., Inc. v. Houston*, 136 F. Supp. 2d 353, 365

(E.D. Pa. 2001); *Risinger v. Concannon*, 117 F. Supp. 2d 61, 71 (D. Me. 2000); *Unzueta v. Schalansky*, No. 99-4162-RDR, 2002 WL 1334854, at *3 (D. Kan. May 23, 2002). Part of the analysis in favor of abrogation of the third prong of *Hunt* is surely the explicit Congressional command to P&As for legal proceedings to vindicate the rights of people with disabilities. That statutory analysis is only heightened by a pragmatic consideration that the community of people with disabilities disproportionately includes people who may be limited in their capacity to advocate for themselves and unable to sue on their own.

> **b.  Even if Congress Had Not Abrogated the Requirement for Individual Participation in P&A Litigation, the Facts and Circumstances of This Case Do Not Require Individual Participation of Each Constituent**

The individual participation of every DRMS constituent is not necessary here, under the nature of the claims or the relief sought. While the other *Hunt* prongs reflect Constitutional standing concerns, the third prong is merely prudential, *Ass'n of Am. Physicians & Surgeons, Inc. v. Texas Med. Bd.*, 627 F.3d 547, 551 (5th Cir. 2010), which Congress may eliminate. *United Food*, 517 U.S. at 555- 58. "[O]nce an association has satisfied *Hunt*'s first and second prongs assuring adversarial vigor in pursuing a claim for which member Article III standing exists, it is difficult to see a constitutional necessity for anything more." *Id.* at 556. The prudential standard is not so exacting as to deprive DRMS of the opportunity to represent its constituents.

21

*Hunt*'s third prong addresses whether the case can proceed without the individual's participation *as a plaintiff*, not merely whether individual evidence or accounts would be necessary. The Fifth Circuit has previously held—following then-Judge Alito's opinion—that, even where "evidence would be needed from" individuals in the organization "in order to prove whether the challenged policy had been enforced, the participation of all the individual members was unnecessary," making associational standing "appropriate." 627 F.3d. at 551 (*citing Hosp. Council of W. Pennsylvania v. City of Pittsburgh*, 949 F.2d 83, 86 (3d Cir. 1991)). The mere fact—true in every case involving disability—that each voter with disabilities has a somewhat different experience as a person with disabilities compared to the next person with disabilities does not require individual participation by every voter with disabilities in the state to justify relief. Where an alleged legal harm is "practiced systematically" and a party seeks only equitable relief, proceeding under associational standing will serve judicial efficiency. *Ass'n of Am. Phys.*, 627 F.3d at 553; *Church of Scientology of California*, 638 F.2d at 1280 (where a "claim asserted and relief requested affect the membership as a whole," individual participation is unnecessary). A direct challenge to a statutory scheme with "complete identity of interests" between the constituents and the organization does not require individual participation, allowing presentation of evidence in a group format. *New York State Club Ass'n, Inc. v. City of New York*,

487 U.S. 1, 10 n.4 (1988). DRMS has interests perfectly aligned with its constituents, and individual participation is unnecessary.

### 4. People With Disabilities Who Already Experience Barriers in Delivering a Ballot in Person May Be Similarly Prevented from Suing on Their Own or Joining a Formal Membership Organization

In considering the criteria for associational standing, the Court should view the elements of the test through the practical context of the case. Congress chose to create programs to protect and advocate for people with developmental disabilities, people with mental illnesses, and people with other disabilities, considering that those people already faced massive barriers to full and equal participation in the world around them. *See, e.g.*, 42 U.S.C. § 15001 (making a finding that individuals with developmental disabilities "often encounter discrimination in the provision of critical services"); 42 U.S.C. § 10801(a) (finding that people with mental illnesses are vulnerable to abuse and injury and that people with mental illnesses sometimes rely on family members to advocate for their needs). One witness from a P&A testified to Congress that "Often, it is the people who are least able to communicate with our [the P&A system] advocates who have the greatest need for our services." S. Rep. 103-120, 14, 1994 U.S.C.C.A.N. 164, 177.

Reasons for disability-related challenges in voting may include placement in institutional, quasi-institutional, or otherwise restrictive housing; inability to understand certain instructions in the absence of accommodation (e.g., by reason of

Deafness or being Hard of Hearing, by reason of blindness or low-vision, by reason of intellectual disability); physical barriers to mailboxes and election facilities obstructing people with physical disabilities; or the effects of mental illnesses or physical illnesses that impede their ability to go into the community and actively participate in the voting process. Many of those same circumstances would likewise impair the ability of a person with a disability to join a formal, dues-paying membership organization. Similarly, many of those same circumstances would impair the ability of a person with a disability to seize the initiative to retain an attorney and litigate on their own behalf. *See, e.g.*, 42 U.S.C. § 10801(a)(2) (discussing the need for surrogate advocacy when incompetent).

Congress enacted the P&A statutes precisely because of these massive and systemic barriers to the self-advocacy of people with disabilities. "Congress found that funding was needed for such organizations because the mentally ill were vulnerable to abuse, injury, and neglect and because the states' response to these problems was often inadequate." *Pennsylvania Prot. & Advoc., Inc. v. Houstoun*, 228 F.3d 423, 425 (3d Cir. 2000) (Alito, J.). Vigorous advocacy in a representative or associational capacity is an important tool to vindicate the rights of people with disabilities who might otherwise not be able to do so. *Cotten,* 929 F.2d at 1057 (noting that residents of institution were unlikely to be able to file suit and represent themselves). Narrowly construing the standing doctrine to prevent

meaningful representation of people with disabilities in court and to prevent vindication of their rights to vote would create a perilous Catch-22 in which a person with a disability might be unable to advocate individually in court for their own rights, but might be prevented from availing themselves of the assistance from the P&A systems created to address this exact need. Compounding all these injustices, this person might also be further unable to vote for new representatives to change the laws because the doors to the courthouse and the voting booth were closed on them. The Court should resist the invitation to construe the standing doctrine in a contorted and narrow manner, only to perpetuate the injustices and inequalities Congress created P&As to fight.

In considering the standing doctrine, the federal court system extended substantial consideration to the rights of apple growers—a group whose capacity to form dues-paying membership organizations or to initiate lawsuits individually is not seriously in dispute—to be represented in court to determine how their apples should be labeled. The federal courts should surely prove no less willing to ensure that the voting rights of people with disabilities, many residing in nursing homes and institutions, should be protected in those same courts through an entity established by Congress and guided by them to protect their rights.

## IV.  CONCLUSION

Should the Court reach the issue of representative standing by Protection and Advocacy Systems like Disability Rights Mississippi, the Court should find that DRMS has, by affidavit and by reference to the system of statutes and rules requiring active direction of the P&A by people with disabilities and their advocates, demonstrated that their organization has as its bona fide constituents all Mississippi voters with disabilities. Having established the scope of their constituency, DRMS has demonstrated that its constituents experience the injury-in-fact of denial of the assistance in voting of the person of their choice. The voting rights of people with disabilities are obviously germane to DRMS's mission. Finally, the participation of individual constituents is neither necessary in the present circumstances nor required following the abrogation of the third *Hunt* prong by Congress. In construing these doctrines, the Court should consider in its equitable assessment the need for P&As to address the ongoing discrimination towards people with disabilities, rather than continue to perpetuate that same discrimination.

Date: January 23, 2024

/s/ Christopher P. McGreal

CHRISTOPHER P. MCGREAL
Disability Rights Texas
TX State Bar No. 24051774
1420 Mockingbird Lane, Suite 450

Dallas, Texas 75247
Telephone: (214) 845-4056
Fax: (214) 630-3472
cmcgreal@drtx.org

PETER HOFER
TX State Bar No. 09777275
Disability Rights Texas
2222 W. Braker Ln.
Austin, Texas 78758
Telephone: (512) 407-2745
Fax: (512) 454-3999
phofer@drtx.org

THOMAS STENSON
Disability Rights Oregon
510 S.W. 10th Avenue, Suite 200
Portland, Oregon 97205
Tel: 503-243-2081
tstenson@droregon.org

*Counsel for Amici Curiae*
*National Disability Rights Network*
*and Disability Rights Texas*

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, *Amici Curiae* National Disability Rights Network and Disability Rights Texas, state that neither entity has a parent corporation and that no publicly held companies hold 10% or more of either entity's stock.

Date: January 23, 2024

/s/ Christopher P. McGreal

CHRISTOPHER P. MCGREAL
Disability Rights Texas
TX State Bar No. 24051774
1420 Mockingbird Lane, Suite 450
Dallas, Texas 75247
Telephone: (214) 845-4056
Fax: (214) 630-3472
cmcgreal@drtx.org

PETER HOFER
TX State Bar No. 09777275
Disability Rights Texas
2222 W. Braker Ln.
Austin, Texas 78758
Telephone: (512) 407-2745
Fax: (512) 454-3999
phofer@drtx.org

THOMAS STENSON
Disability Rights Oregon
510 S.W. 10th Avenue, Suite 200
Portland, Oregon 97205
Tel: 503-243-2081
tstenson@droregon.org

*Counsel for Amici Curiae*
*National Disability Rights Network*
*and Disability Rights Texas*

**CERTIFICATE OF SERVICE**

I certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ Christopher P. McGreal
Christopher P. McGreal

*Counsel for Amici Curiae*
*National Disability Rights Network*
*and Disability Rights Texas*

## CERTIFICATE OF RULE 32(g)(1) COMPLIANCE

I hereby certify that this brief complies with the type-volume limitations in the Appellate Rules. The brief was prepared in Times New Roman font, size 14, and double-spaced, with one-inch margins on all four sides. The total word count in the brief is 7706 words, and the total word count in the portion of the brief to which Rule 32 applies is 5790 words, based on an internal word count feature of the word-processing program on which it was composed.

Date: January 23, 2024

/s/ Christopher P. McGreal

CHRISTOPHER P. MCGREAL
Disability Rights Texas
TX State Bar No. 24051774
1420 Mockingbird Lane, Suite 450
Dallas, Texas 75247
Telephone: (214) 845-4056
Fax: (214) 630-3472
cmcgreal@drtx.org

PETER HOFER
TX State Bar No. 09777275
Disability Rights Texas
2222 W. Braker Ln.
Austin, Texas 78758
Telephone: (512) 407-2745
Fax: (512) 454-3999
phofer@drtx.org

THOMAS STENSON
Disability Rights Oregon
510 S.W. 10th Avenue, Suite 200
Portland, Oregon 97205

Tel: 503-243-2081
tstenson@droregon.org

*Counsel for Amici Curiae*
*National Disability Rights Network*
*and Disability Rights Texas*