No. 23-60463

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

DISABILITY RIGHTS MISSISSIPPI; LEAGUE OF WOMEN VOTERS OF MISSISSIPPI;
WILLIAM EARL WHITLEY; MAMIE CUNNINGHAM; YVONNE GUNN,
*Plaintiffs-Appellees*,

*v.*

LYNN FITCH, IN HER OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE STATE OF
MISSISSIPPI; MICHAEL D. WATSON, JR., IN HIS OFFICIAL CAPACITY AS SECRETARY OF
STATE OF MISSISSIPPI,
*Defendants-Appellants*.

Appeal from the United States District Court
for the Southern District of Mississippi
No. 3:23-cv-350

## DEFENDANTS-APPELLANTS' REPLY BRIEF

LYNN FITCH
  *Attorney General*
SCOTT G. STEWART
  *Solicitor General*
JUSTIN L. MATHENY
ANTHONY M. SHULTS
  *Deputy Solicitors General*
DOUGLAS T. MIRACLE
  *Assistant Attorney General*
MISSISSIPPI ATTORNEY
  GENERAL'S OFFICE
P.O. Box 220
Jackson, MS 39205-0220
Telephone: (601) 359-3680
E-mail: justin.matheny@ago.ms.gov

*Counsel for Defendants-Appellants*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................ii

INTRODUCTION ................................................................................. 1

ARGUMENT ........................................................................................ 5

I.    This Court Should Vacate The Preliminary Injunction Because Section 208 Of The Voting Rights Act Does Not Preempt Mississippi's Ballot-Harvesting Law, S.B. 2358 ............................ 5

     A.    Section 208 Permits States To Reasonably Regulate The Right To Voting Assistance ...................................................... 5

     B.    S.B. 2358 Reasonably Regulates The Right To Voting Assistance ............................................................................. 17

II.   Even Putting Preemption Aside, This Court Should Reject Or Dramatically Narrow The Preliminary Injunction ...................... 20

     A.    The Equities Strongly Weigh Against Injunctive Relief ...... 21

     B.    Any Injunctive Relief Should Be Limited To Plaintiffs With Standing And Demonstrated Irreparable Injury ................. 24

CONCLUSION .................................................................................. 28

CERTIFICATE OF SERVICE ........................................................... 29

CERTIFICATE OF COMPLIANCE .................................................. 29

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Arizona v. Inter Tribal Council of Arizona, Inc.*,
    570 U.S. 1 (2013)...................................................................26

*Atchison v. Collins*,
    288 F.3d 177 (5th Cir. 2002).............................................12

*Baptist Mem'l Hosp. v. Azar*,
    956 F.3d 689 (5th Cir. 2020).............................................10

*Cascabel Cattle Co. v. United States*,
    955 F.3d 445 (5th Cir. 2020)...............................................7

*El Paso Cnty. v. Trump*,
    982 F.3d 332 (5th Cir. 2020).............................................25

*Gill v. Whitford*,
    138 S. Ct. 1916 (2018)........................................................25

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (1982)............................................................25

*Hobart Corp. v. Waste Mgmt. of Ohio*,
    758 F.3d 757 (6th Cir. 2014).............................................10

*Hunt v. Washington State Apple Advert. Comm'n*,
    432 U.S. 333 (1977)............................................................25

*Landor v. Louisiana Dep't of Corr. & Pub. Safety*,
    82 F.4th 337 (5th Cir. 2023) ...............................................7

*Lewis v. Casey*,
    518 U.S. 343 (1996)............................................................27

*Marx v. General Revenue Corp.*,
    568 U.S. 371 (2013) ...................................................................... 10

*Medtronic, Inc. v. Lohr*,
    518 U.S. 470 (1996) ...................................................................... 14

*Merrill v. Milligan*,
    142 S. Ct. 879 (2022) ................................................................... 23

*NAACP v. City of Kyle*,
    626 F.3d 233 (5th Cir. 2010) ..................................................... 22

*NPR Invs., LLC ex rel. Roach v. United States*,
    740 F.3d 998 (5th Cir. 2014) ..................................................... 20

*OCA-Greater Houston v. Texas*,
    867 F.3d 604 (5th Cir. 2017) ....................... 2, 3, 16, 17, 27

*Purcell v. Gonzalez*,
    549 U.S. 1 (2006) (per curiam) ................................................ 23

*Scott v. Schedler*,
    826 F.3d 207 (5th Cir. 2016) ..................................................... 27

*Sturgeon v. Frost*,
    577 U.S. 424 (2016) ...................................................................... 6

*Thomas v. Texas Dep't of Crim. Just.*,
    297 F.3d 361 (5th Cir. 2002) ..................................................... 17

*United States v. Nevares-Bustamante*,
    669 F.3d 209 (5th Cir. 2012) ....................................................... 6

*United States v. Paz-Giron*,
    833 F.3d 836 (7th Cir. 2016) ....................................................... 6

*Waters v. Churchill*,
    511 U.S. 661 (1994) ...................................................................... 17

*Williamson v. Lee Optical of Oklahoma Inc.*,
348 U.S. 483 (1955) ............................................................... 12

**Constitutional Provision**

U.S. Const. art. III ........................................................... 27, 28

**Statutes**

1 U.S.C. § 1 ................................................................... 8, 9, 10

52 U.S.C. § 10508 ........................................................... *passim*

Mississippi Senate Bill 2358 (S.B. 2358) ........................................ *passim*

**Rule**

Fed. R. Civ. P. 23 ........................................................... 26, 27

**Other Authority**

S. Rep. No. 97-417 (1982) ................................................... 11, 18

## INTRODUCTION

This Court should reject the district court's injunction against S.B. 2358, a law addressing ballot harvesting. As defendants have explained, that order rests on serious errors. Plaintiffs' responses are unavailing.

*First*, plaintiffs contend that Section 208 of the Voting Rights Act gives covered voters an "unrestricted" right to any voting assistant of their choice (except employers and union officials) and thus preempts any state law that limits the universe of permissible voting assistants. Pls. Br. 21-30. But Section 208 does not provide a boundless right. It establishes a right for covered voters to receive voting assistance from "*a person of the voter's choice*." 52 U.S.C. § 10508. If Congress wanted to establish an "unrestricted" right to assistance, it would have said *any person of the voter's choice* or *the person of the voter's choice*. It did not. And Section 208 uses the terms "[a]ny voter" and "the voter[ ]"—but it guarantees assistance only from "a person" of the voter's choice. That shows that Congress knew how to sweep broadly, at times swept broadly in Section 208 itself, yet did not sweep so broadly in referring to "a person" of the voter's choice. Section 208 thus must be read to adopt a right to voting assistance that is narrower than the right it would have adopted if it guaranteed assistance from *any person* or *the person* of the voter's choice. Which means: Section 208 guarantees a robust but limited

right to assistance that leaves States leeway to regulate the universe of voting assistants. Defs. Br. 22-36. That understanding serves Section 208's aim of protecting covered voters from undue influence and manipulation—an aim that States can serve only if they can block assistance from bad actors who could exploit vulnerable voters. Defs. Br. 25-27, 34-45. And that understanding accords with background principles that recognize States' preexisting authority to regulate voting—including voting assistance. Defs. Br. 27-29.

Plaintiffs' responses fail. Maintaining that *a person of the voter's choice* in Section 208 means *any person of the voter's choice*, Pls. Br. 25-30, plaintiffs hammer the undisputed point that "a" *can* mean "any." But legions of cases—including those cited by plaintiffs—show that whether "a" means "any" depends on context. And context dooms plaintiffs' view. Defs. Br. 22-36. Plaintiffs also claim that declining to read *a person of the voter's choice* in Section 208 to mean *any person of the voter's choice* will give States "near-unlimited discretion to narrow the scope of federal law whenever the statute places an 'a' in front of a noun." Pls. Br. 32; *see* Pls. Br. 30-34. That is nonsense. Courts read statutes in context. Respecting Section 208's context will not give States "near-unlimited discretion" to defy federal law or produce any of the other bad results that plaintiffs imagine. Plaintiffs further claim that *OCA-Greater Houston v. Texas*, 867 F.3d 604 (5th Cir. 2017), resolves this case in their favor. Pls. Br. 18-20.

But *OCA* did not address the issue here: whether Section 208 forecloses all state laws that limit the universe of voting assistants. Defs. Br. 29-31. Yet plaintiffs *lead* with this argument. That tells the Court all it needs to know about the strength of plaintiffs' view of Section 208.

But perhaps nothing hammers home the flaws in plaintiffs' view more than their concession that (on plaintiffs' reading) Section 208 leaves States powerless to bar voting assistance by criminals, fraudsters, or random strangers—regardless of the risks that those persons present and despite Congress's effort in Section 208 to protect vulnerable voters. Pls. Br. 24, 48; *see* Defs. Br. 9-10, 25-27, 35-36. There is no reason to believe that Congress adopted that ridiculous view. This Court should reject plaintiffs' invitation to read absurdity into Section 208 and should instead read Section 208 in line with text, structure, purpose, and sound principles of construction.

*Second*, plaintiffs contend that the equities favor them. Pls. Br. 43-49. But enjoining S.B. 2358's enforcement harms the State and people of Mississippi. S.B. 2358 targets ballot harvesting and thus combats election fraud, promotes public confidence and participation in elections, and protects voters from confusion, manipulation, and undue influence. Defs. Br. 38-41. Plaintiffs refuse to grapple with the harms that S.B. 2358 addresses. Their 56-page brief does not once mention "ballot harvesting." And against the State's broad showing of harm from an injunction,

plaintiffs focus on S.B. 2358's alleged harms to only *three individual plaintiffs*—only one of whom is even a covered voter. Plaintiffs do not show that any other person will face harm or that those three persons are like any of the non-parties that the injunction affects. Plaintiffs speculate that some number of people will be disenfranchised without an unbounded choice of assistant. Pls. Br. 39-49. That showing does not compare to the showing made by the State. And that is doubly true for plaintiffs' reliance on the two organizational plaintiffs. Plaintiffs claim that those organizations face injury because they must educate people about S.B. 2358. Even if that shows injury in fact for standing—a dubious proposition, because educating voters is a core part of the organizations' reason for existing—it does not establish irreparable harm and so cannot support the injunction.

*Last*, plaintiffs defend the district court's grant of universal relief to every voter covered by Section 208, Pls. Br. 49-55—even though only one plaintiff is a covered voter, even though plaintiffs have never shown that any other voter is like that plaintiff, even though this is not a class action, and even though plaintiffs' showing of harm does not justify such sweeping relief. At minimum this Court should vacate the injunction and rule that any relief may benefit (at most) the individual plaintiffs with standing and demonstrated irreparable injury. Defs. Br. 49-53.

**ARGUMENT**

I.    **This Court Should Vacate The Preliminary Injunction Because Section 208 Of The Voting Rights Act Does Not Preempt Mississippi's Ballot-Harvesting Law, S.B. 2358.**

The district court erred by ruling that S.B. 2358 is likely preempted by Section 208. Defs. Br. 22-45. Plaintiffs' defense of that ruling, Pls. Br. 17-43, lacks merit.

    A.    **Section 208 Permits States To Reasonably Regulate The Right To Voting Assistance.**

Section 208 entitles certain persons to voting assistance but leaves leeway for States to reasonably regulate how and from whom those persons may receive assistance. Defs. Br. 22-36. Plaintiffs resist that view and contend that Section 208 provides a "nearly unrestricted" right: a right to assistance from "anyone" other than the voter's employer or union officials. Pls. Br. 8, 21 (formatting omitted); *see* Pls. Br. 18-39. Plaintiffs' arguments lack merit.

1. Almost all of plaintiffs' arguments rest on the view that "*a* person of the voter's choice" in Section 208 means "*any* person of the voter's choice." Pls. Br. 21-30. That is wrong.

a. Start with plaintiffs' claim that *a person of the voter's choice* in Section 208 "is synonymous with" *any person of the voter's choice*. Pls. Br. 25 (formatting omitted); *see* Pls. Br. 25-30.

5

To defend that claim, plaintiffs invoke cases showing that "a" *can* mean "any." Pls. Br. 25-27. Plaintiffs thus say that *a* "ordinarily" means *any* (Pls. Br. 25), that *a* has been held to mean *any* in some cases (Pls. Br. 25-26), that there is a "presumption" that *a* means *any* (Pls. Br. 26), and that *a* has meant *any* in "ordinary" usage (Pls. Br. 26-27). But there is no dispute that "a" *can* mean "any": defendants agree that it can. Defs. Br. 31-32. But whether "a" *does* mean "any" depends on context. *See Sturgeon v. Frost*, 577 U.S. 424, 438 (2016) ("[T]he words of a statute must be read in their context and with a view to their place in the overall statutory scheme."). Plaintiffs ultimately do not dispute that. Indeed, their cases confirm the point: none holds that *a* means *any* regardless of context. Pls. Br. 25-27. And other cases—ignored by plaintiffs—reject outright the view that *a* must mean *any*. *E.g.*, *United States v. Nevares-Bustamante*, 669 F.3d 209, 213 (5th Cir. 2012) (rejecting argument that "the indefinite article 'a' before the word 'conviction' means that *any* prior conviction could serve"); *United States v. Paz-Giron*, 833 F.3d 836, 839 (7th Cir. 2016) (interpreting "*a* conviction" to mean "*any* conviction" would not be "consistent with the statutory scheme"). So context must determine whether *a* means *any* in Section 208.

Plaintiffs next resist defendants' context-based analysis of Section 208. Pls. Br. 27-29. As defendants have explained: Section 208 establishes a right for certain persons to receive voting assistance from

"a person of the voter's choice." 52 U.S.C. § 10508. If Congress wished to establish a nearly "unrestricted" right to assistance (Pls. Br. 21), it could have said *any person of the voter's choice*. Or if Congress wanted States to defer to the voter's choice in all circumstances, it could have said *the person of the voter's choice*. Section 208 instead allows assistance from "a person" of the voter's choice. That is significant because Section 208 elsewhere uses the terms "[a]ny voter" and "the voter[ ]"—which shows that Congress knew how to sweep broadly and at times swept broadly in Section 208 itself, yet did not sweep so broadly in referring to "a person" of the voter's choice. That context shows that Section 208's phrase "a person of the voter's choice" does not mean *any person of the voter's choice* or *the person of the voter's choice*. Defs. Br. 22-36.

Plaintiffs respond that "all three articles"—*a*, *any*, *the*—"are common words, and their simultaneous presence in a statute is unremarkable." Pls. Br. 27-28. But when Congress uses different phrasings in the same statute, the phrases presumptively mean different things. *Cascabel Cattle Co. v. United States*, 955 F.3d 445, 451 (5th Cir. 2020) ("[D]ifferent words within the same statute should, if possible, be given different meanings."). Even "the same words" can "mean different things" when "placed in different contexts." *Landor v. Louisiana Dep't of Corr. & Pub. Safety*, 82 F.4th 337, 344 (5th Cir. 2023) (cleaned up). And Section 208 uses three different phrases—*any voter* and *the voter* but *a*

*person*—in close proximity in a one-sentence statute. Those deliberate choices of phrasing distinguish Section 208 from the text at issue in the district-court cases that plaintiffs highlight. *See* Pls. Br. 28.

Plaintiffs next contend that "the use of 'the' in a statute does not preclude 'a' from having the same meaning as 'any.'" Pls. Br. 28. But that ignores the textual and structural indicators *in Section 208* that show that "a person of the voter's choice" does not mean *any person of the voter's choice*. Defs. Br. 22-36. Plaintiffs relatedly suggest that Section 208 does not say "*the* person of the voter's choice" because that formulation "could imply that voters may be assisted by only one particular person." Pls. Br. 28-29. But that does not help plaintiffs: "a person of the voter's choice" carries the same risk—both "a" and "the" can import the plural or the singular. 1 U.S.C. § 1.

Last, plaintiffs resist district-court cases that undermine them and cite others that rule as they like. Pls. Br. 29-30 & nn.2-3. That response highlights that all decisions that have addressed the issue here are non-precedential. And none of plaintiffs' favored cases respect Congress's deliberate decisions in Section 208. Defs. Br. 22-36.

b. Plaintiffs also claim that Section 208's "plain text" "creates a nearly unrestricted category of persons who may be chosen to provide assistance." Pls. Br. 21 (formatting omitted); *see* Pls. Br. 21-24. They are wrong.

To start, that entire argument rests on the assumption that "a person of the voter's choice" in Section 208 means "an unrestricted universe of people." Pls. Br. 22; *see*, *e.g.*, Pls. Br. 23. As explained, that assumption is wrong. *Supra* pp. 5-8; Defs. Br. 23-29. Plaintiffs thus get nothing from arguing that "[n]o voter seeing the term 'a person of the voter's choice' would intuit that virtually all persons other than family and household members and caregivers could be excluded." Pls. Br. 22. That argument requires reading "a person of the voter's choice" to mean—in conflict with Section 208's broader text and context—*any person of the voter's choice.*

Plaintiffs' remaining "plain text" arguments largely ignore Section 208's actual text. Plaintiffs say that "by default, courts broadly interpret the word 'person' in federal statutes to include any individual or entity, except governments." Pls. Br. 22 (invoking 1 U.S.C. § 1). And, they continue, "[t]he placement of the word 'a' in front of 'person' preserves that breadth." Pls. Br. 22. But on that logic, Section 208's phrase "a person of the voter's choice" creates a right to assistance from any "corporation[ ], compan[y], association[ ], firm[ ], partnership[ ], societ[y], [or] joint stock compan[y], as well as [any] individual[ ]." 1 U.S.C. § 1 (defining *person*). That is absurd. And it confirms that statutory terms—such as "a person"—must be construed in context, not in defiance of context. *Cf. ibid.* (Dictionary Act's definitions apply to "any

Act of Congress, *unless the context indicates otherwise*") (emphasis added). And that context defeats plaintiffs' arguments. Defs. Br. 23-29.

Plaintiffs next claim that the *expressio unius est exclusio alterius* canon shows that Section 208's exclusions of a voter's employer and union officials as assistants mean that no further limitations are permissible. Pls. Br. 23. But that canon "does not apply unless it is fair to suppose that Congress considered the unnamed possibility and meant to say no to it." *Marx v. General Revenue Corp.*, 568 U.S. 371, 381 (2013) (quotations omitted). Section 208's text and structure—and other canons that recognize States' authority to regulate voting—show that those two baseline exclusions provide a floor and not a ceiling of exclusions. *E.g.*, *Hobart Corp. v. Waste Mgmt. of Ohio*, 758 F.3d 757, 775 (6th Cir. 2014) (reading statute's "enumeration of a few triggering events to preclude finding others would defeat" the statute's aim and produce "illogical" results); Defs. Br. 25-29, 33-36. And it defies credulity to think that Congress blocked States from barring election fraudsters (for example) from assisting voters. *Cf. Baptist Mem'l Hosp. v. Azar*, 956 F.3d 689, 694-95 (5th Cir. 2020) (rejecting argument that statutory exclusions precluded additional exercises of retained authority).

Plaintiffs next claim that defendants "propose a dizzying array of additional, open-ended restrictions" that States may impose on "the definition of a 'person'" that do not "appear[ ] in the text" of Section 208.

Pls. Br. 23-24. But States can impose restrictions on ballot casting because they have preexisting authority to regulate that act. Defs. Br. 27-29. Section 208 does not strip away that authority—so long as States permit a covered voter to receive assistance from "*a* person of the voter's choice." And respecting that authority does not read into Section 208 "an additional, open-ended exception for additional restrictions." Pls. Br. 24. It just recognizes that Congress went only so far in restricting state authority under Section 208. Indeed, plaintiffs do not contest that States "have power to regulate elections"; plaintiffs argue only that "Congress can, and does, preempt election ... statutes." Pls. 37. But that admits that what matters is whether Congress preempted to the extent that plaintiffs claim. It did not: it left States with leeway to regulate ballot collection. Defs. Br. 22-36.

Plaintiffs concede that their reading of Section 208 means that States are powerless to prohibit a voter from obtaining assistance from a criminal, a fraudster, or a random stranger—regardless of the risks of fraud, undue influence, or manipulation that those persons present. Pls. Br. 24, 48. But there is no reason to think that Congress adopted that ridiculous view—particularly when it enacted Section 208 to prevent "undu[e] influence[ ]" and "manipulat[ion]" of "susceptible" voters. S. Rep. No. 97-417, at 62 (1982); *see* Defs. Br. 8-10, 25-27. Plaintiffs say that unleashing such absurdity is "how preemption works." Pls. Br. 24.

But courts try to avoid absurdity. *E.g.*, *Atchison v. Collins*, 288 F.3d 177, 181 (5th Cir. 2002); Defs. Br. 35-36. And avoiding absurdity here is easy: it just requires reading Section 208 in line with text, structure, purpose, and sound rules of construction. Defs. Br. 22-36.

Plaintiffs observe that S.B. 2358 does not itself prohibit criminals (and the like) from collecting a ballot if they fall in the broad ballot-handling categories the law allows, and that S.B. 2358 does not prohibit bad actors from assisting at other stages of voting. Pls. Br. 48. But S.B. 2358 combats the specific harms of ballot harvesting—not every possible harm from voting assistance. *Cf. Williamson v. Lee Optical of Oklahoma Inc.*, 348 U.S. 483, 489 (1955) (legislative reform "may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind"). And S.B. 2358 targets ballot collection and transmission because that is when ballots are most vulnerable to organized harvesting schemes. In any event, plaintiffs' observations glide past what matters: that, on plaintiffs' view, States are powerless to prohibit clearly unfit people from harvesting ballots.

2. Plaintiffs next turn to a parade of horribles. Pls. Br. 30-34. They contend that declining to read *a person of the voter's choice* in Section 208 to mean *any person of the voter's choice* will have "a cascading effect on other statutes," give States "near-unlimited discretion to narrow the

scope of federal law whenever the statute places an 'a' in front of a noun," and "undermine[ ]" federal law. Pls. Br. 32, 34.

That is nonsense. Courts read statutes in context. Respecting Section 208's context will not give States "near-unlimited discretion" to defy federal law or produce any of the other bad results that plaintiffs imagine. Those imagined results rest on a made-up, straw-man view that defendants' argument turns only and entirely on Section 208's use of the solitary word "a" rather than the word "any." *E.g.*, Pls. Br. 31-34. But defendants' view rests on Section 208's full text and statutory structure, Congress's aims, and principles of statutory interpretation. Defs. Br. 24-29, 31-36. Respecting Section 208's careful use of language (such as its use of *any voter* and *the voter* but *a person* in the same sentence) will not "undermine[ ]" any other federal statute, does not render the phrase "a person" hopelessly "ambiguous," and does not mean that "traditional principles of statutory interpretation" will no longer apply when a statute "place[s] an 'a' in front of a noun." Pls. Br. 34.

Plaintiffs also claim that defendants read into Section 208 an "implied[ ] delegat[ion]" of authority and that reading Section 208 to leave States authority to regulate ballot collection amounts to "hid[ing] elephants in mouseholes." Pls. Br. 30-31. But States have broad authority to regulate voting. Defs. Br. 27-29. Under our Constitution, States retain all vote-regulating authority that Section 208 (or another valid provision

13

of federal law) does not "clear[ly] and manifest[ly]" take away. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996). That includes the power to regulate ballot collection. Recognizing as much does not read an "implied[ ] delegat[ion]" into one statutory word.

3. Plaintiffs further contend that Mississippi's law conflicts with Section 208's purposes. Pls. Br. 34-36. This argument fails too.

Plaintiffs argue that if voters covered by Section 208 do not "have the assistance of a person of their own choice" then they "may be deterred from voting or be forced to rely on someone they do not trust." Pls. 34, 35. But that is not an argument against S.B. 2358, which allows voters to choose from many trusted people—just not every single person imaginable. Plaintiffs next contend that, "[u]nder Defendants' reading, the only practical effect of Section 208 would be to prevent employers and unions from assisting voters, while preserving the states' existing ability to regulate other sources of assistance." Pls. Br. 35; *see* Pls. Br. 35-36. But defendants agree that Section 208 entitles covered voters to "a person of the voter's choice" and that a State could go too far in restricting that entitlement. Defendants simply maintain that a plaintiff must *show* that the State has gone too far, rather than rest on the untenable view that the State retains *none* of its authority to regulate voting assistance. Last, plaintiffs say that "the state's preferred exception for 'reasonable regulations'" is "absent" from Section 208's text and legislative history.

14

Pls. Br. 36. But "reasonable regulations" just describes the retained authority that Section 208 does not take away from States. When a State possesses authority to regulate an activity and a federal law only partially restricts that authority, the State retains authority to regulate the activity that the federal law does not reach. *See* Defs. Br 27-29. That is where things stand under Section 208.

4. Plaintiffs contend that "S.B. 2358 creates an obstacle to Congress's purposes of ensuring covered voters can obtain assistance." Pls. Br. 36; *see* Pls. Br. 36-39. But plaintiffs' arguments on this score rest on their mistaken view that Section 208 entitles covered voters to receive assistance from *any person of the voter's choice*. *E.g.*, Pls. Br. 37 (repeating that view). Correctly viewed, Section 208 strikes a balance between guaranteeing to covered voters assistance from a person of their choice and leaving States leeway to regulate voting assistance. Defs. Br. 23-29. So S.B. 2358 promotes "Congress's purpose." Pls. Br. 37.

Plaintiffs add that this Court should "decline Defendants' invitation to adopt either an undue burden or a reasonableness test." Pls. Br. 38; *see* Pls. Br. 38-39. Defendants have not asked this Court to adopt an undue-burden test, so plaintiffs' digression does not help them. And in explaining that States can "reasonably regulate" voting assistance, defendants are simply describing the leeway that Section 208 leaves to States to adopt regulations so long as covered voters can choose "a person

of the voter's choice" to assist them. *Supra* pp. 14-15. Endorsing that authority honors Section 208's text and the latitude it leaves to States.

5. Finally, plaintiffs maintain that this Court's decision in *OCA-Greater Houston v. Texas*, 867 F.3d 604 (5th Cir. 2017), "resolves" this case in plaintiffs' favor. Pls. Br. 18; *see* Pls. Br. 18-20. But *OCA* did not decide the issue presented here—whether Section 208 forecloses all state regulations that limit the universe of voting assistants. Defs. Br. 29-31.

*OCA* held that Section 208 preempted a Texas law that permitted limited language-interpreter assistance to voters outside the voting booth. 867 F.3d at 614-15. Texas argued that Section 208's right to voting assistance applies only "inside the ballot box" and thus that voter-assistance regulations that "extend[ ] beyond the ballot box" are "beyond Section 208's coverage." *Id.* at 614. This Court rejected that view in light of the Voting Rights Act's broad "definition" of *vote*, which includes steps both inside and outside of the voting booth. *Id.* at 614-15.

*OCA* did not, as plaintiffs suggest, hold that Section 208 forecloses all state limitations on the universe of voting assistants. Pls. Br. 20. Texas argued that state laws that apply only outside the ballot box "cannot conflict with the Voting Rights Act." Texas *OCA* Reply Br. 7, https://bit.ly/3UhfUJc. Texas did not argue that Section 208 leaves States leeway to reasonably regulate voting assistance. So *OCA* did not decide that question. *OCA* "cannot be read as foreclosing an argument that [the

16

Court] never dealt with." *Waters v. Churchill*, 511 U.S. 661, 678 (1994); *see Thomas v. Texas Dep't of Crim. Just.*, 297 F.3d 361, 370 n.11 (5th Cir. 2002) ("Where an opinion fails to address a question squarely, we will not treat it as binding precedent."). This Court never said that "no further restrictions" beyond Section 208's employer and union exclusions "are permissible." Pls. Br. 20. And there is no basis for concluding that this Court "necessarily adopted" that sweeping view, Pls. Br. 20, which was not necessary to decide the case. *OCA* does not help plaintiffs—and, as explained, their view of Section 208 does not withstand scrutiny.

## B. S.B. 2358 Reasonably Regulates The Right To Voting Assistance.

S.B. 2358 is a targeted regulation that imposes minimal burdens on voters and comports with Section 208's guarantee of assistance from "a person of the voter's choice." Defs. Br. 36-45. Plaintiffs claim that "[i]n practice," S.B. 2358 "impose[s] an undue burden on the right to voting assistance" that Section 208 protects. Pls. Br. 39 (formatting omitted). But nothing that plaintiffs say, Pls. Br. 39-43, bears that out.

To start, plaintiffs claim that the Senate Report on Section 208 "confirms that *any* restriction on a voter's choice of assistance must be preempted." Pls. Br. 39; *see* Pls. Br. 39-40. Plaintiffs cite nothing that says that. Plaintiffs just impose on the Senate Report their own flawed view of Section 208. They claim that the Senate Report explains that

17

States may adopt "only" narrow "voter assistance procedures" that "encourage[ ] greater participation" in elections. Pls. Br. 39. But that ignores the report's "recogni[tion]" that States retain their "legitimate right" "to establish necessary election procedures" to "protect" "voters." S. Rep. No. 97-417, at 63. And it ignores that S.B. 2358 both protects voters and encourages greater participation. Defs. Br. 9-10, 26-27, 38-41. Plaintiffs note that the report states that voters covered by Section 208 "'are entitled to assistance from a person of their own choice.'" Pls. Br. 39 (quoting S. Rep. No. 97-417, at 63). But that echoes Section 208's use of "*a* person of their own choice"—it does not say *any person of their own choice*. Last, plaintiffs support their broad preemption view by claiming that the report recognizes that Section 208's employer-assistance bar "should be construed narrowly" and "should not apply in communities with 'very few employers.'" Pls. Br. 40 (quoting S. Rep. No. 97-417, at 64). But Section 208 provides no such limitation. Plaintiffs cannot support their view of Section 208 by invoking legislative history espousing a view that Section 208 rejects.

Plaintiffs next claim that "ample evidence" shows that S.B. 2358 burdens voters and risks disenfranchising them. Pls. Br. 40; *see* Pls. Br. 40-43. But that claim rests on the unique circumstances of *one* individual-plaintiff voter, Mr. Whitley, who (plaintiffs claim) would be harmed by S.B. 2358 if he, for example, had to "either pay a carrier fee to cast his

ballot or be at the mercy of his postal worker." Pls. Br. 42. Even crediting that (highly gerrymandered) claim of harm, plaintiffs have not shown that Mr. Whitley is representative of any other voter. They have not shown that S.B. 2358 is anything but a reasonable regulation on the whole—which defeats their claim that S.B. 2358 flatly violates Section 208. *Cf. infra* Part II-B.

Plaintiffs also claim harms to plaintiff DRMS's "constituents," Pls. Br. 41, but they fail to identify any actual constituent who faces irreparable harm. Plaintiffs speculate that S.B. 2358 may "disenfranchis[e]" "many of DRMS's constituents" who "live in congregate settings." Pls. Br. 41. But it is hard to imagine a clearer application of S.B. 2358's broad authorization of ballot collection and transmission by "caregiver[s]" than the professional "staff" of "nursing homes and long-term care facilities" who "handle the [residents'] mail." Pls. Br. 41.

Last, plaintiffs complain that S.B. 2358 does not define terms like "caregiver" and so leaves uncertain the scope of the statute's authorization of assistance. Pls. Br. 42-43. But that at most could support a claim that a particular application of S.B. 2358 conflicts with Section 208. Defs. Br. 43-44. It does not justify what plaintiffs seek: a blunt holding that S.B. 2358 violates Section 208, period. S.B. 2358 provides clear guideposts that show its targeted application—including its aim to target ballot harvesting, stated intent to exempt "instances

where ballot collection does not constitute ballot harvesting," S.B. 2358 (title), and heightened intent requirement. Defs. Br. 42-45. And plaintiffs have pointed to nothing to overcome the usual rule of interpreting undefined statutory terms "according to their ordinary and natural meaning" and in view of "the overall policies and objectives of the statute." *NPR Invs., LLC ex rel. Roach v. United States*, 740 F.3d 998, 1007 (5th Cir. 2014).

In sum, S.B. 2358 is a targeted law that imposes minimal burdens while combatting fraud, promoting election integrity, and protecting voters. Plaintiffs' broad attacks fail to show that S.B. 2358 conflicts with Section 208. At most, plaintiffs have raised questions about particular applications of S.B. 2358. Those questions should be resolved through as-applied challenges rather than through the sweeping claim that plaintiffs made and the district court credited.

## II. Even Putting Preemption Aside, This Court Should Reject Or Dramatically Narrow The Preliminary Injunction.

Even if the district court were right on the merits, the injunction still cannot stand. Defs. Br. 45-53. Plaintiffs' arguments to the contrary, Pls. Br. 43-55, are unavailing.

**A.     The Equities Strongly Weigh Against Injunctive Relief.**

The harm to the State and public from enjoining S.B. 2358's enforcement greatly outweighs any alleged harm to plaintiffs. Defs. Br. 45-49. Plaintiffs' responses to these points, Pls. Br. 43-49, lack merit.

To start, plaintiffs contend that S.B. 2358 harms individual voters. Pls. Br. 44-47. But plaintiffs have (at most) alleged harm to three individual plaintiffs—only one of whom is a voter. Defs. Br. 48-49; *supra* Part I-B. And they fail to show that that solitary voter is at all like the "thousands of Mississippi voters" who plaintiffs claim will be harmed by S.B. 2358. ROA.30. Plaintiffs speculate about non-party voters who plaintiffs claim (without evidence) may be "disenfranchise[d]" if this Court does not endorse a boundless choice of assistant. Pls. Br. 41. Plaintiffs also allude to DRMS's "statutory role" in "representing" "all Mississippians with a disability." Pls. Br. 45. But plaintiffs fail to point to a single non-party with a tangible injury beyond the three individual plaintiffs and thus cannot justify the relief the district court ordered. Plaintiffs also fault defendants for "not know[ing] how many absentee voters ... could be harmed by S.B. 2358." Pls. Br. 45. But the absence of that proof reflects *plaintiffs'* failure to show—as is their burden—that S.B. 2358 will irreparably harm voters *and* that that injury outweighs the harm to the State.

Plaintiffs next claim that the organizational plaintiffs "have sustained injuries to their organizational missions through the diversion of resources" to educate voters about S.B. 2358. Pls. Br. 45; *see* Pls. Br. 45-46. That is not irreparable harm. Educating constituents about the law is central to those organizations' missions. ROA.21-26, 32, 87-88, 101-103. At most a diversion of resources *might* support the organizations' standing. But standing (which requires the bare constitutional minimum of an injury in fact) is worlds away from the irreparable harm needed to enjoin enforcement of a state law. Here, plaintiffs have not shown how allocating resources to "educat[ing] members and constituents" (Pls. Br. 51) would "concretely and perceptibly impair[ ]" the organizations' "ability to carry out [their] purpose," *NAACP v. City of Kyle*, 626 F.3d 233, 239 (5th Cir. 2010) (quotations omitted)—which is to "assist and educate Mississippi voters," ROA.21. *See infra* Part II-B. An organization cannot show irreparable harm by merely performing its core mission. If it were otherwise, any change in the law would always irreparably harm an organization that aims to educate about that area of the law.

Plaintiffs contend that "[t]he balance of the equities and the public interest" both "favor allowing more eligible voters to vote" by "enjoining" S.B. 2358's enforcement. Pls. Br. 46; *see* Pls. Br. 46-47. But the equities cut the other way. S.B. 2358 combats election fraud, which promotes

confidence and participation in elections. Defs. Br. 39-41, 46-48. S.B. 2358 also protects voters from confusion, manipulation, and undue influence—all aims underlying Section 208. Defs. Br. 7-14, 26, 39-41. Plaintiffs also say that "Mississippi may not advance its interests by violating federal law," Pls. Br. 47, but that argument collapses with plaintiffs' merits position.

Plaintiffs also claim that, because defendants did not expedite this appeal or seek a stay "despite the then-impending November 2023 elections," defendants "demonstrate[d] that S.B. 2358 does not serve any legitimate purpose." Pls. Br. 44, 47-48. This argument is farcical. A State is irreparably injured any time a court blocks one of its laws. Defs. Br. 46. And defendants have an interest not just in combatting election fraud, but also in certainty and clarity as elections approach. *Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006) (per curiam); *Merrill v. Milligan*, 142 S. Ct. 879, 880-81 (2022) (Kavanaugh, J., concurring in grant of applications for stays) ("When an election is close at hand, the rules of the road must be clear and settled," and "[l]ate judicial tinkering" "can lead to disruption and to unanticipated and unfair consequences."). When the district court enjoined S.B. 2358's enforcement—on July 25, 2023— preparation for the 2023 elections was well underway. The State chose to pursue an ordinary-course appeal rather than expedition—leaving clear rules of the road in place.

Last, plaintiffs claim that enjoining S.B. 2358's enforcement would not "deny the State the power to legislate against" voter fraud and manipulation. Pls. Br. 49. But S.B. 2358 seeks not just to go after general fraud or manipulation. It combats the specific dangers presented by ballot harvesting. Defs. Br. 11-14, 39-41, 46-48. Plaintiffs shut their eyes to those dangers. Indeed, plaintiffs' 56-page brief never once mentions "ballot harvesting." Plaintiffs cannot seriously account for the equities when they are not willing to confront what S.B. 2358 seeks to achieve. The equities strongly disfavor any relief for plaintiffs.

## B. Any Injunctive Relief Should Be Limited To Plaintiffs With Standing And Demonstrated Irreparable Injury.

As defendants have explained, the relief the district court ordered is vastly overbroad and should be limited to (at most) the individual plaintiffs with demonstrated standing and irreparable injury. Defs. Br. 49-53. Plaintiffs' responses, Pls. Br. 49-55, lack merit.

Plaintiffs first claim that defendants "do not contest Plaintiffs' standing." Pls. Br. 50. That is false. Defendants did not dispute the *individual plaintiffs'* standing in the district court on the preliminary-injunction motion only. Defs. Br. 16; ROA.190 n.2. But defendants did and do dispute the organizational plaintiffs' standing, ROA.194-201, which the district court never addressed. *See* ROA.335-336.

Plaintiffs next claim that DRMS and LWV-MS "have organizational standing to seek broader relief" under *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), because those groups "divert[ed] additional resources to educate members and constituents about S.B. 2358." Pls. Br. 51. But DRMS and LWV-MS have not shown that any such diversion "perceptibly impaired" their mission, *Havens Realty*, 455 U.S. at 379— which, as noted above, is to "assist and educate Mississippi voters," ROA.21. *See El Paso Cnty. v. Trump*, 982 F.3d 332, 344 (5th Cir. 2020) ("[T]he organization's reaction to the allegedly unlawful conduct must differ from its routine activities."). And even if plaintiffs could establish organizational standing, the district court's order is not "tailored to redress" their "particular injury." *Gill v. Whitford*, 138 S. Ct. 1916, 1934 (2018). The district court did not enjoin S.B. 2358's enforcement as to the organizational plaintiffs, but rather as to *all situations involving voters covered by Section 208*. ROA.338. The organizational plaintiffs have failed to show injury *to voters* that would justify that sprawling relief.

Plaintiffs also claim that DRMS and LWV-MS have "associational standing" "to seek injunctive relief based on injury to their members or constituents." Pls. Br. 51; *see* Pls. Br. 51-53. But those groups have failed to identify a single "member[ ]" with "standing to sue in their own right." *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). Plaintiffs say that DRMS's "constituents" "are the functional

25

equivalent of members for the purposes of associational standing, *so long as they participate in and guide the organization's efforts and play a critical role in the organization's control, direction, and activities*." Pls. Br. 52 (quotations omitted; emphasis added). But plaintiffs have never alleged that anyone with a demonstrated injury performs such functions for DRMS. *See* ROA.26-27, 75-99. Even if plaintiffs' allegations on injury were sufficient to establish injury in fact and thus *standing*, they do not establish the broad irreparable harm necessary for the universal injunctive relief that the district court ordered. Defs. Br. 50.

Plaintiffs further contend that "in preemption cases," courts can "enjoin enforcement of conflicting state laws against persons similarly situated to the plaintiff, even without class certification." Pls. 53. But plaintiffs cite no case that says that. Instead, they cite a case that did not consider the issue. *See* Pls. Br. 53 (citing *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1 (2013)). Plaintiffs also allege that class relief under Fed. R. Civ. P. 23 is "unnecessary" in voting cases because "the nature of the rights asserted require[s] that the injunction run to the benefit of all persons similarly situated." Pls. Br. 53. But that just shows the problem: Plaintiffs have not shown that all voters purportedly covered by Section 208 *are* similarly situated under S.B. 2358 such that universal relief is proper. Defendants have explained that S.B. 2358 may not affect many voters covered by Section 208 *at all*. Defs. Br. 51-52;

26

*contra* Pls. Br. 55. Such voters are not similarly situated to the one individual-plaintiff voter whom plaintiffs allege will be disenfranchised by S.B. 2358. *E.g.*, *Lewis v. Casey*, 518 U.S. 343, 360 (1996) ("granting a remedy beyond what was necessary to provide relief to" individuals with injury was "improper" where the alleged harm "has not been shown to be systemwide"). Yet the district court granted relief that is tantamount to a class-wide injunction—without requiring plaintiffs to meet the requirements of Rule 23.

Plaintiffs next attempt (Pls. Br. 54) to distinguish cases that reinforce the argument that the district court's overbroad order exceeds the bounds of Article III and equitable principles. *See* Defs. Br. 51-52. But those decisions reaffirm that injunctive relief is "overbroad" when it "exceeds the scope" of the plaintiffs' demonstrated "harm." *OCA-Greater Houston v. Texas*, 867 F.3d 604, 615, 616 (5th Cir. 2017); *see Scott v. Schedler*, 826 F.3d 207, 209, 214 (5th Cir. 2016) (an injunction is "overbroad" when "not narrowly tailored to remedy the specific action which gives rise to the order") (cleaned up). The relief ordered by the district court far exceeds the harm established by plaintiffs.

Last, plaintiffs claim that injunctions can properly benefit non-parties who lack injury "as long as" those benefits are "merely incidental." Pls. Br. 55. But the numerous non-party voters affected by the district court's order are not "merely incidental" beneficiaries. The district court

27

awarded them the same relief that the party plaintiffs received. The court's order flouts Article III and equitable principles. Defs. Br. 49-53. This Court should at least direct the district court to vastly narrow that order to only the individual plaintiffs with demonstrated standing and irreparable injury.

## CONCLUSION

This Court should vacate (or substantially narrow) the district court's order granting a preliminary injunction.

Respectfully submitted,

LYNN FITCH
  Attorney General

*s/ Justin L. Matheny*

SCOTT G. STEWART
  *Solicitor General*
JUSTIN L. MATHENY
ANTHONY M. SHULTS
  *Deputy Solicitors General*
DOUGLAS T. MIRACLE
  *Assistant Attorney General*
MISSISSIPPI ATTORNEY
  GENERAL'S OFFICE
P.O. Box 220
Jackson, MS 39205-0220
Telephone: (601) 359-3680
E-mail: justin.matheny@ago.ms.gov

*Counsel for Defendants-Appellants*

February 6, 2024

## CERTIFICATE OF SERVICE

I, Justin L. Matheny, hereby certify that the foregoing brief has been filed with the Clerk of Court using the Court's electronic filing system, which sent notification of such filing to all counsel of record.

Dated: February 6, 2024

*s/ Justin L. Matheny*
Justin L. Matheny
*Counsel for Defendants-Appellants*

## CERTIFICATE OF COMPLIANCE

This brief complies with the word limitations of Fed. R. App. P. 32(a)(7)(B) because it contains 6,474 words, excluding parts exempted by Fed. R. App. P. 32. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because its text has been prepared in proportionally spaced typeface, including serifs, using Microsoft Word 2016, in Century Schoolbook 14-point font.

Dated: February 6, 2024

*s/ Justin L. Matheny*
Justin L. Matheny
*Counsel for Defendants-Appellants*